**BEST CHAIRS INCORPORATED,**
**Appellant–Respondent,**

v.

**REVIEW BOARD OF the INDIANA**
**DEPARTMENT OF WORKFORCE**
**DEVELOPMENT, Appellee,**

and

**Denise R. Schilling, Appellee–**
**Petitioner.**

**No. 93A02–0806–EX–577.**

Court of Appeals of Indiana.

Oct. 31, 2008.

---

Andrew W. Gruber, Casey J. Eckert, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee Review Board.

## OPINION

BAKER, Chief Judge.

We are faced herein with a business grappling with an economic downturn and an employee who had to bear the consequences along with her employer. Confronted with reduced demand for its product, the employer was forced to transfer the employee to a new department, resulting in a reduced hourly wage but enabling the employee to maintain a full-time work schedule and her health insurance benefits. Had the employer permitted the employee to remain in her original department at her original wage, she would have been

forced to work only part-time hours and lost her benefits as a result. Unfortunately, there was simply no longer enough work to go around. Consequently, the employee quit her job. Under these circumstances, we find that the employee did not establish that she voluntarily terminated her employment with good cause and, as a result, is not eligible for unemployment compensation.

Appellant-respondent Best Chairs, Inc. (Best Chairs), appeals the order of Appellee Review Board of the Indiana Department of Workforce Development (the Board) granting appellee-petitioner Denise R. Schilling's request for unemployment benefits. Best Chairs argues that the Board ignored evidence in concluding that Schilling is eligible for unemployment compensation. Finding that the evidence leads unerringly to one conclusion—that Schilling did not meet her burden of establishing good cause for leaving her employment—we reverse.

## FACTS

Schilling began her employment with Best Chairs in its sewing department on August 28, 2006. At that time, the employees in the sewing department worked forty-hour weeks. In 2007, an economic downturn began to affect the company. As a result, all departments, including the sewing department, experienced a reduction in work schedule. Specifically, had Schilling remained in the sewing department, its employees would have been forced to work twenty- to twenty-two-hour weeks. Thus, Schilling would have worked fewer hours and lost her health insurance benefits.

Consequently, in October 2007, Best Chairs elected to transfer Schilling to the bundle department. In that department, she was able to maintain a thirty-eight- to forty-two-hour week and she kept her health insurance. Her wage, however, was reduced by approximately $6.00 per hour. On January 24, 2008, Schilling voluntarily terminated her employment with Best Chairs because of the reduction in her hourly wage.

Schilling applied for unemployment compensation benefits, and on February 7, 2008, the claims deputy denied her application, concluding that she "voluntarily left employment without good cause in connection with the work." Appellant's App. p. 6. Schilling appealed that determination, and on April 7, 2008, an Administrative Law Judge (ALJ) held a hearing at which the parties participated telephonically. On April 8, 2008, the ALJ affirmed the claims deputy's initial determination that Schilling was ineligible for unemployment benefits, finding that "[Best Chairs] moved [Schilling] from her original position in order to allow [Schilling] to work full-time hours. If [Schilling] would have maintained her sew[ing] position, she would not have been working full[ ]time." *Id.* at 17. Thus, "a reasonably prudent person under the same or similar circumstances would not have been impelled to terminate their employment." *Id.* at 18.

Schilling appealed the ALJ's decision to the Board. Having reviewed the record, on June 5, 2008, the Board reversed the ALJ's determination, finding Schilling to be eligible for unemployment compensation. The Board found, in pertinent part, as follows:

> A reasonably prudent employee would leave her employment if her Employer permanently reduced her wages by approximately $6.00 per hour. A reasonably prudent employee would not leave her employment if her wages were "temporarily" reduced. In this case, [Schilling's] wages were reduced substantially for three months with no end in sight. [Schilling's] transfer from Sewer to Bun-

dle Prep could no longer be considered "temporary." After such an extended period of time, her transfer could be best described as "indefinite." [Schilling] had good cause in connection with her work to leave her employment.

*Id.* at 21. The Board did not refer to the facts that, had Schilling remained in the sewing department, her hours would have been significantly reduced and she would have lost her health insurance benefits. Best Chairs now appeals.

### DISCUSSION AND DECISION

■ Best Chairs argues that the Board erroneously reversed the ALJ and found that Schilling is entitled to receive unemployment compensation benefits. A panel of this court recently described the way in which we review a decision of the Board:

> The Indiana Unemployment Compensation Act provides that any decision of the review board shall be conclusive and binding as to all questions of fact. Ind. Code § 22–4–17–12(a). Review Board decisions may, however, be challenged as contrary to law, in which case the reviewing court examines the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts. Ind.Code § 22–4–17–12(f). Under this standard, we review determinations of specific or basic underlying facts, conclusions or inferences drawn from those facts, and legal conclusions. *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.,* 693 N.E.2d 1314, 1317 (Ind.1998).

> When reviewing a decision by the Review Board, our task is to determine whether the decision is reasonable in light of its findings. *Abdirizak v. Review Bd. of Dept. of Workforce Development,* 826 N.E.2d 148, 150 (Ind.Ct.App. 2005). Our review of the Review Board's findings is subject to a "substantial evidence" standard of review. *Id.* In

this analysis, we neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the Review Board's findings. *Id.* Further, we will reverse the decision only if there is no substantial evidence to support the Review Board's findings. *Id.*

*Quakenbush v. Rev. Bd. of Ind. Dep't of Workforce Dev.,* 891 N.E.2d 1051, 1053 (Ind.Ct.App.2008).

■ An employee is disqualified from collecting unemployment compensation if the employee has left her employment voluntarily "without good cause in connection with the work...." Ind.Code § 22–4–15–1(a). The employee has the burden of establishing that the voluntary termination of employment was for good cause, meaning that the employee must show that:

> (1) the reasons for leaving employment were such as to impel a reasonably prudent person to terminate employment under the same or similar circumstances; and (2) the reasons are objectively related to the employment. This second component requires that the employee show her reasons for terminating employment are job-related and objective in nature, excluding reasons which are personal and subjective.

*M & J Mgmt., Inc. v. Rev. Board of the Dep't of Workforce Dev.,* 711 N.E.2d 58, 62 (Ind.Ct.App.1999) (internal citation omitted).

Both parties rely on *Quillen v. Review Board of the Indiana Employment Security Division* in support of their respective arguments. 468 N.E.2d 238 (Ind.Ct.App. 1984). In *Quillen,* an employee received a salary of $295 per week for fifty-five hours of work. Because of "worsening business condition," the employer was forced to reduce its employees' hours and put salaried employees on an hourly pay system. *Id.*

at 240–41, 242. Thus, the employee's hours were cut to 40 per week, with an hourly wage of $4.70, and she could work five hours of overtime per week at $7.05 per hour. The employee quit and applied for unemployment compensation. The Board determined that the employee was ineligible for unemployment compensation because she had voluntarily terminated her employment without good cause.

The employee appealed, and a panel of this court began its analysis by explaining the general rules governing the employee-employer relationship:

An employer may establish business hours, working schedules and other employment terms. An employee may place conditions on these terms. If the employer agrees to the employee's conditions, they become part of the employment contract. If the employer *unilaterally* changes agreed upon employment terms, the employee may either (1) accept the changes and continue employment under the new terms or (2) reject the changes and quit work. An employee terminating employment under these circumstances does so with "good cause" and is entitled to unemployment benefits. However, the circumstances must also be so unfair or unjust as to compel a reasonably prudent person to quit work.

*Id.* at 241–42 (emphasis in original) (internal citations omitted). In the matter at hand herein, the Board relied on this passage in finding Schilling eligible for benefits. The *Quillen* court went on, however, to find that the employee in that case had *not* voluntarily terminated her employment with good cause:

[A]n employee whose hours are reduced, along with the hours of other employees, due to a seasonal reduction in business quits without good cause. . . .

[The employee and the employer] agreed [the employee] would work 55 hours a week for $295 when [the employee] became head cook. These agreed upon terms became contractual working conditions. . . . [The employer] later informed her the reduction to a 40 hours work week at $4.70 an hour was due to worsening business conditions. Other employees' hours were likewise reduced and other salaried employees were put on an hourly pay system. [The employer] gave [the employee] the opportunity to work more than 40 hours a week at time and a half. The Review Board found the changes to be material, but its detailed findings determined [the employee] would earn nearly the same weekly amount under the proposed method as she earned in her salaried position if the demands of the business required her to work 55 hours per week.

*The Review Board also found "the employer's level of business had slackened" in the few months before [the employee] quit and other employees' hours likewise were being reduced. [The employee] does not dispute worsening business conditions existed. We agree with the Review Board the proposed change was not so unfair or unjust as to compel a reasonably prudent person to quit work under similar circumstances.*

*Id.* at 242 (emphasis added) (internal citations and footnote omitted). Thus, this court affirmed the Review Board's conclusion that the employee was ineligible for unemployment compensation.

Here, likewise, the Board found that Best Chairs was forced to transfer Schilling from the sewing department to bundle prep "[d]ue to a reduction in business[.]" Appellant's App. p. 20. Schilling does not dispute that assertion, nor does she dispute Best Chairs's assertion that *all* departments experienced a reduction in work

schedule. Even more compelling, Schilling does not dispute that, had she remained in the sewing department, her hours would have been drastically reduced to the point of being a part-time employee, resulting in the loss of her health insurance benefits. It logically follows that, had Schilling remained in the sewing department, there would have been less work for the other employees in that department, meaning that *all* of the employees would have had their hours reduced.

Businesses and employees alike are struggling with the current economic challenges, and we should strive to balance their respective interests when they diverge. Here, all of the evidence in the record supports a conclusion that Best Chairs attempted to make the best of a difficult situation. By shifting around some of its employees, it was able to keep most of its employees on a full-time schedule, meaning that they retained their critically important health insurance. A casualty of this plan, however, was Schilling's hourly wage. Schilling was the least senior member in the sewing department, and as a result, Best Chairs elected to transfer her to the bundle department, where she would continue to work full-time but receive a significantly reduced hourly wage.[1]

The Board erred by comparing the new terms of Schilling's employment to the terms of her employment before the economic downturn. Unfortunately, under no circumstances was Best Chairs in a position to maintain those terms for Schilling. Instead, we must consider what the evidence indicates Schilling's position would have been if she had not been transferred to the bundle department. Had Schilling remained in the sewing department, her hourly wage would have remained the same. Her hours, however, would have been drastically reduced, and she would have ended up working a twenty- to twenty-two-hour week. Appellant's App. p. 39. She would have lost her health insurance benefits as a result.

Under these circumstances and given this record, we can only conclude that—as in *Quillen*—the change in the terms of Schilling's employment was not so unfair or unjust as to compel a reasonably prudent person to quit work under similar circumstances. Thus, we find that Schilling failed to meet her burden of establishing that she voluntarily terminated her employment with good cause and that there is not substantial evidence supporting the result reached by the Board. Consequently, we reverse.

The judgment of the Board is reversed.

MATHIAS, J., and BROWN, J., concur.

---

1. The Board spent a portion of its order concluding that the transfer to the bundle department was permanent rather than temporary. We need not consider this issue to reach our conclusion herein, and will simply assume for argument's sake that the Board was correct in finding that the transfer was "indefinite." Appellant's App. p. 21.