900 N.E.2d 488 (2009)
Michael T. DAVIS, Appellant-Defendant,
v.
REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Parkview Health System, Inc., Appellee-Plaintiff.
No. 93A02-0806-EX-564.
Court of Appeals of Indiana.
February 5, 2009.
*489 Timothy J. Vrana, Timothy J. Vrana LLC, Columbus, IN, Attorney for Appellant.
Gregory F. Zoeller, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

*490 OPINION
FRIEDLANDER, Judge.
Michael T. Davis appeals the decision of the Unemployment Insurance Review Board of the Indiana Department of Workforce Development (the Review Board) denying him unemployment benefits. Davis presents the following restated issue for review: Is the Review Board's finding that Davis voluntarily left his employment with Parkview Health System, Inc. (Parkview) without good cause contrary to the law and the evidence?
We affirm.
Davis was employed by Parkview from April 30, 2006 to January 7, 2008, when he chose to resign due to a proposed change in his employment. Specifically, because of ongoing poor performance as a supervisor, Parkview sought to demote Davis from a housekeeping supervisor to a housekeeping assistant. Rather than accept the new working conditions, Davis voluntarily terminated his employment. Davis then sought unemployment compensation benefits.
On February 12, 2008, a deputy of the Department of Workforce Development denied Davis's claim for unemployment compensation. Davis appealed the deputy's decision and obtained a hearing before an Administrative Law Judge (ALJ). Following the hearing, the ALJ affirmed the deputy's decision on May 5, 2008. In its written decision the ALJ issued the following findings and conclusions, which were adopted by the Review Board on June 2, 2008:
FINDINGS OF FACT: The claimant began employment April 30, 2006 and his last work day was January 7, 2008. He worked as a housekeeping supervisor who was paid $15.72 per hour.
The ALJ finds that one of the claimant's job duties was to schedule. The ALJ finds there were problems with the manner with which the claimant scheduled. Copies of warnings acknowledged by the claimant were offered and made part of the record.... These warnings were dated April 13, 2007, July 20, 2007, August 8, 2007, and November 14, 2007. The November 14, 2007 was a final warning. In one incident, the claimant assumed that a co-worker of an employee would share the change of schedule. The claimant was admonished that he was the supervisor and was responsible to share any changes with employees.
On December 3, 2007, another scheduling problem occurred. The ALJ finds the parties met on January 7, 2008. A determination was made that the claimant could transfer to Parkview North to assist with the grand opening. However, the claimant would be working as housekeeping assistant. He would no longer have supervisory duties. Although the rate of pay was not specifically noted, the ALJ finds the range for an assistant was from $8.11 to $12.17 per hour.[[1]]
The claimant was upset and gave notice and left employment.

CONCLUSIONS OF LAW: In Jones v. Review Board of Indiana Employment Security Division (1980), Ind.App., 399 N.E.2d 844, the court stated:

*491 "Generally, an employer has the prerogative of setting business hours, working schedules and working conditions in the absence of a specific agreement. However, an employee has the right to place conditions or limitation on his employment. If such conditions are made know [sic] to the employer and are agreed to by it, these conditions become contractual working conditions. If the working conditions are unilaterally changed by the employer and the employee chooses to terminate the employment rather than accept the change, the employee will be entitled to unemployment benefits since the reason for termination was a change in work agreed to be performed by the employee. Such reasons constitute good cause. Wade v. Hurley (1973), 33 Colo.App. 30, 515 P.2d 491; Gray v. Dobbs House, Inc. (1976), Ind.App., 171 Ind.App. 444, 357 N.E.2d 900 (concurring opinion). Likewise, if an employee is discharged for refusal to accept a unilateral change in the agreed upon working conditions, the employee would be entitled to benefits as the discharge would not be for just cause as it is defined in IC XX-X-XX-X. However, if the employee chooses to remain in the employment under the changed conditions, the prior agreed upon condition will be deemed to have been abandoned and will no longer be considered part of the working conditions." (Footnote omitted.).
The issue was whether the change in the employment agreement was so egregious that it would cause a reasonable prudent person to quit employment. The ALJ concludes the claimant had issues with scheduling employees. Scheduling is one of the main job duties of a supervisor. He must ensure, particularly in a hospital, that areas are maintained by housekeeping staff. In one instance, he expected one employee to share the schedule with another employee. The claimant was delegating one of his job duties. It was not the responsibility for any employee to pass that type of information to another because the employee does not have authority to change another employee's schedule. The ALJ concludes the employer properly warned the claimant about his work performance. The claimant reached the last step on November 14, 2007. There was a subsequent incident on December 3, three weeks after the final warning which prompted the discussion on January 7, 2008. An employee could have been discharged, but the employer chose to give the claimant an opportunity to continue employment. The ALJ concludes that the employer's actions were more than reasonable in lieu [sic] of the claimant's work performance. The claimant failed to establish that the employer's decision was so egregious that it would cause a reasonable prudent person to quit employment. The claimant therefore failed to carry his burden of proof. He voluntarily left employment without good cause in connection with the work. He is ineligible for benefits under the Act.
Appellant's Appendix at 4-5 (footnote supplied).
On appeal, Davis claims he was improperly denied unemployment compensation benefits. Davis contends he had good cause for terminating his employment because Parkview unilaterally changed his working conditions by taking away his supervisory duties and reducing his pay by somewhere between 23% and 48%.
*492 We have recently sent forth the standard of review applicable in this context:
"The Indiana Unemployment Compensation Act provides that any decision of the review board shall be conclusive and binding as to all questions of fact. Ind.Code § 22-4-17-12(a). Review Board decisions may, however, be challenged as contrary to law, in which case the reviewing court examines the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts. Ind.Code § 22-4-17-12(f). Under this standard, we review determinations of specific or basic underlying facts, conclusions or inferences drawn from those facts, and legal conclusions. McClain v. Review Bd. of the Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1317 (Ind. 1998).
When reviewing a decision by the Review Board, our task is to determine whether the decision is reasonable in light of its findings. Abdirizak v. Review Bd. of Dept. of Workforce Development, 826 N.E.2d 148, 150 (Ind.Ct.App. 2005). Our review of the Review Board's findings is subject to a "substantial evidence" standard of review. Id. In this analysis, we neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the Review Board's findings. Id. Further, we will reverse the decision only if there is no substantial evidence to support the Review Board's findings. Id."
Best Chairs v. Review Bd. of Ind. Dep't of Workforce Dev., 895 N.E.2d 727, 730 (Ind. Ct.App.2008) (quoting Quakenbush v. Review Bd. of Ind. Dep't of Workforce Dev., 891 N.E.2d 1051, 1053 (Ind.Ct.App.2008)). Thus, we will not reverse the Review Board's decision unless reasonable people would be bound to reach a different conclusion. See Mshar v. Review Bd. of Ind. Employment Sec. Div., 445 N.E.2d 1376 (Ind.Ct.App.1983).
"The purpose of the unemployment compensation act is to provide benefits to those who are involuntarily out of work, through no fault of their own, for reasons beyond their control." Wasylk v. Review Bd. of Ind. Employment Sec. Div., 454 N.E.2d 1243, 1245 (Ind.Ct.App.1983). Consistent with the purpose of unemployment compensation laws, a stricter standard is imposed on those who voluntarily quit working. Wasylk v. Review Bd. of Ind. Employment Sec. Div., 454 N.E.2d 1243.
An employee who voluntarily leaves employment without good cause in connection with the work is not entitled to unemployment compensation benefits. See Ind.Code Ann. § 22-4-15-1(a) (West, PREMISE through 2008 2nd Regular Sess.); Best Chairs v. Review Bd. of Ind. Dep't of Workforce Dev., 895 N.E.2d 727. The determination of whether an employee quit for good cause is a question of fact for the Review Board. Mshar v. Review Bd. of Ind. Employment Sec. Div., 445 N.E.2d 1376. Further, it is the employee's burden to establish that he or she quit for good cause. Best Chairs v. Review Bd. of Ind. Dep't of Workforce Dev., 895 N.E.2d 727. With respect to this burden, we have observed:
"good cause" means the employee's reasons for terminating must be objective and job related. It is only when the employer's demands on the employee are so unreasonable and unfair that a reasonably prudent person would be impelled to terminate that "good cause" exists for voluntary termination. Mshar v. Review Bd. of Ind. Employment Sec. Div., 445 N.E.2d at 1377 (emphasis supplied). See also Best Chairs v. Review *493 Bd. of Ind. Dep't of Workforce Dev. ., 895 N.E.2d at 732 (in light of economic downturn, "the change in the terms of [] employment was not so unfair or unjust as to compel a reasonably prudent person to quit work under similar circumstances").
Here, the evidence establishes that Davis was demoted for ongoing unsatisfactory performance as a supervisor, particularly with respect to scheduling employees. Over a period of nearly a year Davis had received verbal counseling and a number of written warnings regarding problems with his work performance. Along with the written warnings, Davis was provided with work improvement plans and daily assistance from management in efforts to improve his supervisory skills. After receiving a final written warning on November 14, 2007, Davis made another scheduling error on December 3. Soon thereafter, Davis began seeking to transfer to another department as a marketing specialist or catering supervisor. Due to the final warning in his record, however, Davis was ineligible for an internal transfer. After several informal communications between management and Davis regarding his future at the hospital, a formal meeting was held on January 7, 2008. At this meeting, the director of housekeeping, Dan Malloy, made it clear to Davis that he could no longer remain in the position of housekeeping supervisor. Malloy informed Davis that he was being demoted to a housekeeping assistant and that he could make a fresh start at Parkview North, which was about to have its grand opening. Davis was also informed that the new position would result in reduced pay. Rather than accept the demotion, Davis immediately tendered his resignation because he believed he was being treated unfairly.
Under the specific circumstances of this case, the Review Board determined that Parkview acted reasonably when it demoted Davis. As the Review Board explained, scheduling is one of the main functions of a supervisor. Davis was offered many opportunities to improve his skills in this regard but was unable or unwilling to do so. In light of Davis's ongoing deficient performance as a supervisor, Parkview's ultimate decision to place Davis in a position more suited to his skills, with a corresponding reduction in pay, was reasonable and fair. Thus, Davis has failed to establish that Parkview's unilateral change in employment terms was so unreasonable or unfair as to compel a reasonably prudent person to quit work under similar circumstances. See Best Chairs v. Review Bd. of Ind. Dep't of Workforce Dev., 895 N.E.2d 727; Mshar v. Review Bd. of Ind. Employment Sec. Div., 445 N.E.2d 1376.
In response, Davis asserts that he is entitled to unemployment benefits even if his demotion was justified by substandard work performance. He claims that some type of intentional wrongdoing is necessary to disqualify a claimant from benefits. In other words, Davis appears to argue that he must be found to have been "at fault" for his demotion in order to be denied benefits.
As set forth above, unemployment compensation benefits are intended for those who are out of work through no fault of their own. Wasylk v. Review Bd. of Ind. Employment Sec. Div., 454 N.E.2d 1243. Fault or just cause for discharge, in the unemployment context, means "failure or volition, and does not mean something blameworthy, culpable, or worthy of censure." Wakshlag v. Review Bd. of Ind. Employment Sec. Div., 413 N.E.2d 1078, 1082 (Ind.Ct.App.1980) (explaining what conduct constitutes just cause for discharge). This includes, among other things, "a carelessness or negligence of such a degree or recurrence as to ... *494 show an intentional or substantial disregard of the employer's interest, or of the employee's duties or obligation to his employer." Id.
In the instant case, the Review Board made no finding regarding whether Davis was "at fault" with respect to his substandard work performance and resulting demotion. We observe, however, that the issue before the Review Board was not whether Parkview established Davis was discharged for just cause. Cf. McCurdy v. Dep't of Employment & Training Servs., 538 N.E.2d 277 (Ind.Ct.App.1989) (the burden of establishing just cause for discharge rests with the employer). Rather, the issue was whether Davis established that he had good cause for quitting his employment with Parkview in light of his demotion. In this context, the concept of fault comes into play if Davis voluntarily left his employment without good cause (i.e., if the demotion was not so unreasonable or unfair as to compel a reasonably prudent person to quit work under similar circumstances).
Best Chairs is an example of a case where the claimant was demoted through no fault of her own, but we still determined she was not entitled to unemployment compensation benefits. In that case, Denise Schilling quit after Best Chairs informed her that she was going to be moved from the sewing department to the bundle department with a significant reduction in her hourly wage. The employer's actions were the result of an economic downturn and reduced demand for its product, and Schilling was not the only employee affected. In reversing the Review Board's award of benefits to Schilling, we observed, "all of the evidence in the record supports a conclusion that Best Chairs attempted to make the best of a difficult situation." Best Chairs v. Review Bd. of Ind. Dep't of Workforce Dev., 895 N.E.2d at 732. Under the circumstances, we concluded, "the change in the terms of Schilling's employment was not so unfair or unjust as to compel a reasonably prudent person to quit work under similar circumstances." Id. We therefore concluded that Schilling failed to establish that she voluntarily terminated her employment with good cause.
Contrary to Davis's assertions on appeal, the relevant inquiry is not whether he was "at fault" for his demotion. Rather, the Review Board appropriately looked to whether Parkview acted fairly and reasonably in demoting Davis. Davis's demotion was clearly justified by ongoing substandard work performance, and Davis has failed to establish that the terms of the alternative position offered him were unreasonable under the circumstances.[2] Parkview did not act so unreasonably or unfairly as to compel a reasonably prudent person to quit work. Therefore, we affirm the Review Board's determination that Davis voluntarily terminated his employment with Parkview without good cause in connection with the work.
Judgment affirmed.
MAY, J., and BRADFORD, J., concur.
NOTES
[1] Davis apparently quit before Parkview could inform him of the precise amount of pay he would receive as a housekeeping assistant. At the hearing before the ALJ, evidence was presented that the range of pay for an assistant was from $8.11 to $12.17 per hour. There was no testimony regarding where Davis's pay would have fallen in that range. We observe, however, that Davis's pay as a supervisor fell in the upper-middle end of the supervisor pay scale.
[2] Consideration of the reasonableness of the terms of the new position guards against draconian demotions that have the intended effect of constructively discharging an employee whom the employer might not otherwise be able to discharge for just cause. See Allegheny Valley Sch. v. Pa. Unemployment Comp. Bd. of Review, 548 Pa. 355, 697 A.2d 243 (1997) (Cappy, J., dissenting).