Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**LISA M. DILLMAN**
Dillman & Associates, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD OF THE INDIANA
DEPARTMENT OF WORKFORCE
DEVELOPMENT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**STEPHANIE L. ROTHENBERG**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jul 05 2012, 9:10 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.C., | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | ) No. 93A02-1202-EX-69 |
| | ) |
| REVIEW BOARD OF THE INDIANA | ) |
| DEPARTMENT OF WORKFORCE | ) |
| DEVELOPMENT and M. INC., | ) |
| | ) |
| Appellees-Respondents. | ) |

APPEAL FROM THE REVIEW BOARD
OF THE DEPARTMENT OF WORKFORCE DEVELOPMENT
Case No. 11-R-5671

**July 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

S.C. voluntarily quit her job with M. Inc. after her weekly hours were reduced from thirty or thirty-five to two. She filed a claim for unemployment benefits. The Review Board of the Indiana Department of Workforce Development ("Review Board") concluded that she voluntarily terminated her employment without good cause in connection with the work and therefore was ineligible for unemployment benefits. On appeal, S.C. argues that the Review Board's ineligibility determination is contrary to law. We agree with S.C. and therefore reverse the Review Board's decision denying S.C. unemployment benefits.

**Facts and Procedural History**

For thirteen years, S.C. worked thirty to thirty-five hours per week for M. Inc. Early in 2011, her work hours were cut to two hours per week. After several failed attempts to have her work hours increased, S.C. voluntarily quit. S.C. applied for unemployment compensation benefits. The claims deputy of the Department of Workforce Development denied her application, and the denial was affirmed by an administrative law judge ("ALJ"). Subsequently, the Review Board affirmed the ALJ and adopted and incorporated by reference the ALJ's findings and conclusions as follows:

> FINDINGS OF FACT: The Administrative Law Judge enters the following findings of fact. Claimant was employed by this employer from 1999 to March 28, 2011. At the time of the separation the claimant was employed as a cashier. This employer was the claimant's last separating employer prior to the claimant applying for unemployment benefits.
>
> The claimant had generally worked thirty to thirty five hours per week, but her hours occasionally fell below that when work was slow. Early each year the employer has an annual inspection and they pick people who are going to be present during that inspection. Claimant had indicated that she did not want to

2

be one of the people present when the inspection occurred.  The employer schedules the people who are going to be present during the inspection for more hours because they want to make sure that they have all the training and are ready for the inspection.  That along with the fact that it was the employer's slowest part of the year resulted in the claimant and a few other employees being scheduled less than five hours per week after the first of the year while the employer was getting ready for that inspection.  At the end of her employment the claimant was being scheduled as little as two hours per week, which she worked in one shift.  The claimant lives six miles from work and the car that she was driving would get around twenty miles per gallon, so if you use the actual gas costs it was costing the claimant about $2.50 to $3.00 to get to and from work.  If you use the government allowed $0.50 per mile for business deductions, it was costing her $6 a day to get to and from work.  The claimant earned $8.80 per hour and felt that after taxes it was not profitable for her to work two hours per week.  Claimant had complained several times that she needed more hours but had not been scheduled.

On March 28, 2011, the district manager was present and the claimant told her that she really needed more than two hours per week because she could not make it on that.  The district manager told the claimant that she would talk to the store manager and see what they could work out.  When the district manager talked to the store manager they agreed that they would have the claimant come in and do some of the cleaning necessary to get ready for the inspection, however, they did not have an opportunity to tell the claimant that before the claimant submitted her resignation at the end of the day on March 28, 2011.  Claimant's hours would have gone back to 30 or 35 hours per week after the inspection and when things picked up again.  In addition, the claimant could have requested that she be placed off work or not scheduled for two hour shifts, but the claimant did not request that before quitting.

CONCLUSIONS OF LAW:  The Administrative Law Judge concludes that the claimant voluntarily left her employment without good cause in connection with work within the meaning of Indiana Code 22-4-15-1.  Considering that taxes would be taken out of her pay and that she had expenses of traveling to work, the claimant was actually realizing less than $10 a shift for working a two hour shift, which was a condition in connection with the work which would cause a reasonably prudent person to find it unacceptable.  Claimant, however, did not make reasonable efforts to resolve the problem before quitting because if she had waited to see the outcome of the district manager's attempt to get her additional hours, she would have found that there were more hours available to her.  In addition, the claimant could have requested that she not be scheduled for two hour shifts.  The claimant's failure to take those

3

reasonable steps before quitting her employment causes her quitting to be without good cause in connection with the work within the meaning of Indiana Code 22-4-15-1.

Appellant's App. at 3-4.  S.C. appeals.

**Discussion and Decision**

S.C. asserts that the Review Board's determination that she is ineligible for unemployment benefits because she voluntarily left her employment without good cause in connection with the work is contrary to law.[1]  When the Review Board's decision is challenged as being contrary to law, our review is limited to a two-part inquiry into:  "(1) 'the sufficiency of the facts found to sustain the decision'; and (2) 'the sufficiency of the evidence to sustain the findings of facts.'" *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind. 1998) (quoting Ind. Code § 22-4-17-12(f)).  Applying this standard, we review "(1) determinations of specific or 'basic' underlying facts, (2) conclusions or inferences from those facts, sometimes called 'ultimate facts,' and (3) conclusions of law." *Id.*  The Review Board's findings of basic fact are subject to a "substantial evidence" standard of review. *Id.*  In conducting our analysis, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence most favorable to the Review Board's findings. *Id.*  The Review Board's conclusions regarding ultimate facts involve an inference or deduction based on the findings of basic fact, and we typically review them to ensure that the Review Board's inference is "reasonable" or

---

[1] The Review Board argues that S.C. waived her challenge to its ineligibility determination because S.C. included documents in her appendix that were not accepted as evidence by the Review Board.  As S.C. has not cited to the documents or otherwise relied on them in this appeal, we decline to find that she waived her argument.

4

"reasonable in light of its findings." *Id.* at 1318 (citation and quotation marks omitted). We review the Review Board's conclusions of law using a de novo standard. *Ind. State Univ. v. LaFief*, 888 N.E.2d 184, 186 (Ind. 2008).

Pursuant to the Indiana Unemployment Compensation Act, individuals who are "unemployed through no fault of their own" are eligible for unemployment benefits. Ind. Code § 22-4-1-1. An employee who voluntarily leaves employment "without good cause in connection with the work" is not entitled to unemployment compensation benefits. Ind. Code § 22-4-15-1(a). Whether an employee voluntarily terminates his or her job for good cause is a question of fact for the Review Board. *Indianapolis Osteopathic Hosp., Inc. v. Jones*, 669 N.E.2d 431, 433 (Ind. Ct. App. 1996). The employee bears the burden to establish that he or she quit for good cause. *Id.* To establish "good cause," the employee must show (1) that the employee's reasons for quitting are objective and job-related and (2) that the employer's demands on the employee are "so unreasonable and unfair that a reasonably prudent person would be impelled to terminate" work under similar circumstances. *Davis v. Review Bd. of Ind. Dep't of Workforce Dev.*, 900 N.E.2d 488, 492 (Ind. Ct. App. 2009) (citations omitted).

Here, the Review Board found that the reduction of S.C.'s weekly hours from thirty or thirty-five to two "was a condition in connection with the work which would cause a reasonably prudent person to find it unacceptable." Appellant's App. at 4. However, the Review Board found that S.C. quit without good cause because she failed to take reasonable steps to resolve the problem. *Id.* S.C. argues that she had acted reasonably in trying to

resolve the reduction in hours before terminating her employment and was not required to take any additional steps to resolve the reduction in her hours.

The Review Board presents two arguments, neither of which is responsive to S.C.'s argument or to the ALJ's findings and conclusions that it adopted. The Review Board now argues that S.C. did not terminate employment with good cause because (1) her hours were reduced as a result of a decline in business and (2) by staying at M. Inc. for three months after her hours were reduced, S.C. accepted the change in working conditions. The Review Board does not, nor indeed cannot, challenge its determination that S.C.'s reduction in weekly hours was a condition with the work which would cause a reasonably prudent person to find it unacceptable. The Review Board could have made its own findings and conclusions, but it chose to adopt the ALJ's. We decline to entertain the Review Board's new justifications for determining that S.C. voluntarily terminated her employment without good cause.

As to the steps that S.C. took to resolve the reduction in her work hours, the Review Board argues that the only date in the record that S.C. asked for more hours is March 28, 2011, implying that S.C. had not discussed the problem with either the store manager or the district manager until that day. However, the Review Board found that "S.C. had complained several times that she needed more hours but had not been scheduled." *Id*. at 4. We find the Review Board's argument disingenuous in light of its finding that S.C. complained several times and the substantial evidence in the record that supports it. S.C. testified regarding her efforts to resolve the problem as follows:

6

I had talked to [the store manager] and asked her if I could get more hours when people quit, and I got, and she told me, he, she told me I had to talk to [the district manager]. I talked to [the district manager] and she said she would talk to [the store manager], and I never did get any reason[.]

….

I was working thirty-five, forty hours right up until after the first of the year 'cause I was helping out whenever needed, and, but I never did get anything from, any reason why they cut my hours. I'd talk to one, they'd say one thing. I'd talk to the other one, they'd say something else. (INAUDIBLE) … There was hours to be had when people quit and I'd ask for them, but no I can't do it. I've been told to keep you right at two hours."

Tr. at 6-7 (ellipsis in original). Later, S.C. testified, "I asked, I asked and I never got no response." *Id*. at 10. When the ALJ asked her why she did not wait to see if the district manager could get her more hours after their discussion on March 28, 2011, S.C. replied,

Because I had, I been talking to her all along and nothing happened so I figured well evidently they just don't want me there. … So, you know, I talked to, to them I don't know at least two, three times to tell them about my hours being cut and (INAUDIBLE) I said I just can't do this no more.

*Id*. at 11 (ellipsis in original). Thus, S.C. tried to resolve the problem several times before March 28, 2011.

Moreover, in response to S.C.'s problem, the district manager told her only that she would talk to the store manager and "see what I could do about getting hours added to the schedule for her." *Id*. at 8. The district manager did not tell S.C. that she would get more hours. In fact, there is no evidence in the record to support the Review Board's finding that S.C.'s "hours would have gone back to 30 or 35 hours per week after the inspection and when things picked up again." Appellant's App. at 4.

7

We conclude that S.C. carried her burden to show that the cut of her weekly work hours from thirty or thirty-five to two is, under the circumstances, "so unreasonable and unfair that a reasonably prudent person would be impelled to terminate." *See Davis*, 900 N.E.2d at 492. Accordingly, the Review Board's determination that S.C. voluntarily left her employment without good cause in connection with the work is contrary to law. As such, we reverse the Review Board's denial of unemployment compensation.

Reversed.

VAIDIK, J., and BRADFORD, J., concur.