**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 20 2013, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**BRADLEY J. OSKEY**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**STEPHANIE L. ROTHENBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BRADLEY J. OSKEY, | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | ) No. 93A02-1203-EX-272 |
| | ) |
| REVIEW BOARD OF THE INDIANA | ) |
| DEPARTMENT OF WORKFORCE | ) |
| DEVELOPMENT and CL SCHUST COMPANY, | ) |
| INC., | ) |
| | ) |
| Appellees-Respondents. | ) |

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT
OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
Cause No. 12-R-464

**February 20, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

In this case, the appellant-claimant, Bradley J. Oskey, quit his job as a roofer with the CL Schust Company (Schust). Contending that he quit because Schust was, in fact, not paying him the required wage amount, Oskey applied for unemployment benefits. The evidence presented at the hearing before the Administrative Law Judge (ALJ) demonstrated that Oskey failed to take reasonable steps to inform Schust of the issues regarding his compensation until after he had quit.

In light of these circumstances, we agree with the ALJ's and the Review Board's determination that Oskey voluntarily left his employment without good cause and, therefore, is not eligible for unemployment compensation benefits. As a result, we affirm the Review Board's decision to deny Oskey's claim for benefits.

## FACTS

On October 9, 2008, Oskey began working for Schust as a roofer. Oskey was a full-time hourly employee and was assigned to a project at the Randolph County Courthouse. Oskey last worked for Schust on September 23, 2011. On that day, Oskey turned in his time card and key, told a Schust representative that he could not work for the level of pay that he was receiving, and quit work. Oskey claimed, and it was later found, that Schust was not meeting the wage scale requirement on the courthouse job.

Oskey subsequently applied for unemployment benefits with the Indiana Department of Workforce Development (DWD). On December 26, 2011, a claims

2

deputy with the DWD found that Oskey voluntarily left his employment without good cause. Oskey appealed that decision, and a telephonic hearing with the ALJ was conducted on January 17, 2012. Oskey was present, and an administrative assistant, Cindy Royer, represented Schust.

At that hearing, Oskey claimed that he quit working for Schust because he had learned on September 23, 2011, that the job he was working was a "wage scale job," and he was not being paid the proper amount. Ex. p. 46-47. Royer acknowledged that Oskey's assertion was correct. More specifically, Royer testified that she was the individual in charge of payroll and that no one from Schust had informed her that Oskey was performing a wage scale job. Royer specifically acknowledged at the hearing before the ALJ that Schust had not been paying Oskey the required wage amount while he was working at the Randolph County Court House.

After quitting, Oskey contacted Schust's owner and brought the wage error to his attention. At that point, Schust paid Oskey the difference between the wages he had earned and the wages that he should have been earning. Schust also issued a check to Oskey for the cash equivalent of the fringe benefits that Oskey had opted out of.

The ALJ found that Oskey was not being paid the correct wage amount while working as a roofer at the court house. However, it was also determined Oskey did not attempt to resolve the issues with Schust before quitting. Oskey admitted that he had not raised any questions regarding the wage scale payments before quitting, but he claimed that he should not have been required to do so. When Oskey quit, representatives from

3

Schust assumed that his concern about his pay was because he had recently been demoted and had received a pay cut for wages that he had received on non-governmental jobs. However, Oskey admitted that he quit work because Schust had not been meeting the wage scale requirements.

Following the hearing, the ALJ affirmed the claims deputy's decision denying Oskey's request for benefits. The ALJ found, among other things, that Oskey quit work with Schust because he was not being paid the correct amount. The ALJ also found that a reasonably prudent person would feel compelled to leave employment under these circumstances.

However, the ALJ also determined that Oskey did not make reasonable efforts to maintain his employment relationship with Schust prior to quitting. Moreover, it is undisputed that Schust corrected Oskey's pay when Oskey raised his concerns after he quit. Because Oskey did not raise these issues before he quit work, the ALJ found that Oskey voluntarily left his employment with Schust without good cause "in connection with the work as defined by IC 22-4-15-1." Ex. 46, 47.

On March 1, 2012, the Review Board affirmed the ALJ's decision. Additionally, while it was determined that Schust had not been paying Oskey the proper amount for his work at the court house, the Review Board found that Oskey did not present any evidence that Schust "intentionally failed to pay him [the] . . . mandated wages." Appellant's App. p. 45. Oskey now appeals.

4

DISCUSSION AND DECISION

I.  Standard of Review

We initially observe that the Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact."  McClain  v. Rev. Bd. of the Ind. Dept of Workforce Dev., 693 N.E.2d 1314, 1316 (Ind. 1998).  Moreover,

> Indiana Code § 22-4-17-12(f) provides that when the Board's decision is challenged as contrary to law, the reviewing court is limited to a two part inquiry into: (1) "the sufficiency of the facts found to sustain the decision"; and (2) "the sufficiency of the evidence to sustain the findings of facts." Under this standard courts are called upon to review (1) determinations of specific or "basic" underlying facts, (2) conclusions or inferences from those facts, sometimes called "ultimate facts," and (3) conclusions of law.

Id. at 1317.

Under our standard of review, we neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Review Board's findings.  Id.  We will reverse the decision "only if there is no substantial evidence to support the findings."  Id.

Questions of ultimate facts are essentially "mixed questions of law and fact."  Id. at 1318.  The ultimate facts are typically reviewed to ensure that the Review Board's inference is reasonable.  Some questions of ultimate fact are within the special competence of the Review Board.  In such cases, a court should "exercise greater deference to the reasonableness of the Board's conclusion."  Id.  The Review Board's deduction requires reversal if the underlying facts are not supported by substantial

5

evidence or the logic of the inference is faulty, even where the agency acts within its expertise, or if the agency proceeds under an incorrect view of the law.  Id.

## II.  Oskey's Contentions

Oskey argues that the Review Board erred in denying his request for unemployment benefits.  Specifically, Oskey asserts that he was entitled to such benefits because he "was denied statutorily mandated wages throughout the course of [his] employment with Schust."  Appellant's Br. p. 1.

In resolving this issue, we initially observe that when an individual voluntarily leaves his employment "without good cause in connection with the work," he is disqualified from receiving unemployment compensation benefits.  Ind. Code § 22-4-15-1(a); Indianapolis Osteopathic Hosp., Inc. v. Jones, 669 N.E.2d 431, 434 (Ind. Ct. App. 1996).  Whether an employee voluntarily leaves his employment without good cause in connection with the work is a question of fact to be determined by the Review Board. Indianapolis Osteopathic Hosp., 669 N.E.2d at 433.

In Best Chairs, Inc. v. Review Board, 895 N.E.2d 727, 730 (Ind. Ct. App. 2008), the following standard was set forth for determining what the claimant must prove to show good cause for leaving a job:

> The employee has the burden of establishing that the voluntary termination of employment was for good cause, meaning that the employee must show that:
>
> (1) The reasons for leaving employment were such as to impel a reasonably prudent person to terminate employment under the same or similar circumstances; and (2) the reasons are objectively related to the

employment. This second component requires that the employee show her reasons for terminating employment are job-related and objective in nature, excluding reasons which are personal and subjective.

895 N.E.2d at 730 (internal citation omitted).

As discussed above, Oskey left his employment with Schust because he believed that he was not being properly compensated. Appellant's Br. p. 1-3; Tr. p. 4-15. And it was in fact found that Schust had not been paying Oskey the correct amount of wages while he was working at the court house. Appellant's App. p. 44-45, 47. However, it is apparent that Oskey did not take any steps before leaving his employment to ascertain whether he could or would receive a higher wage per hour and reimbursement for previous hours that he had been underpaid. Indeed, it was only after quitting his employment with Schust that Oskey complained to management about the discrepancy in the payment of "wage scale" versus his normal hourly wage rate. Tr. p. 8. And as mentioned above, when Oskey contacted Schust after he had quit, the discrepancies in the wages were rectified. Id. at 7-8.

In light of these circumstances, we agree with the Review Board's decision that a reasonable person would have brought such wage discrepancies to the attention of Schust's management or its human resources department prior to leaving employment. That said, we cannot say that it was reasonable for Oskey to quit, subsequently contact the management of the company about allegedly unfair wages, and then make a claim for unemployment benefits. This is particularly so here, because when Schust was notified

7

of the errors, it attempted to remedy its error by correcting the amount and issuing a check to Oskey.

While we in no way condone Schust's underpayment of wages, we must conclude that because Oskey did not make a reasonable effort to maintain his employment relationship with Schust, he is not entitled to collect unemployment benefits. Put another way, the Review Board correctly determined that a reasonably prudent person would have first discussed the issue involving wage discrepancies with the company before leaving employment. As a result, it was properly determined that Oskey voluntarily left his employment without good cause in connection with the work and, therefore, is not eligible for unemployment compensation benefits.

The decision of the Review Board is affirmed.

RILEY, J., and BARNES, J., concur.