**INDIANAPOLIS OSTEOPATHIC HOS-
PITAL, INC., d/b/a Westview Hos-
pital, Appellant–Employer,**

v.

**Lisa A. JONES, Appellee–Claimant.**

No. 93A02–9602–EX–113.

Court of Appeals of Indiana.

July 23, 1996.

John S. (Jay) Mercer, Todd H. Belanger, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Office of Attorney General, Indianapolis, for Appellee.

## OPINION

BARTEAU, Judge.

The Review Board of the Indiana Department of Employment and Training Services determined that Lisa A. Jones is entitled to unemployment compensation. Indianapolis Osteopathic Hospital, Inc. d/b/a Westview Hospital (Westview) appeals that determination. We affirm.

## FACTS

Jones, a therapeutic diet clerk, worked for Westview for fourteen years. During that time period, Jones worked seven-hour shifts and every other weekend. In July of 1995, Westview informed Jones that, beginning in September of 1995, she would be required to work twelve-hour shifts, three days per week, and a thirteen-hour shift every third weekend. Jones informed Westview that she could not work twelve-hour shifts because she could not find child care for her two children for those hours. When Westview maintained that Jones had no choice but to work the new schedule, Jones voluntarily resigned.

The Indiana Department of Workforce Development determined that Jones was ineligible for unemployment compensation because she voluntarily left employment without good cause. Jones appealed that determination and an administrative law judge reversed the denial of unemployment compensation, finding that Jones had good cause for terminating her employment. The Board affirmed the administrative law judge's determination and adopted and incorporated his findings of fact and conclusions of law.

The findings of fact entered by the administrative law judge and adopted by the Board provide in part:

–that the claimant was employed by the employer for approximately fourteen years as a therapeutic dietician.

–that the claimant voluntarily left employment when she determined that the employer had breached the terms of the employment agreement.

–that at the time of initial employment the claimant was advised that she would be working a seven hour day.

–that during the course of her fourteen years of employment she worked a seven hour work day.

–that on July 20, 1995, the claimant was informed that the employer would engage in a "shift change" which would require the claimant to work a twelve hour work day.

–that the claimant had minor children.

–that the change in the claimant's work schedule would require her to make alternate arrangements for child care for her minor children.

–that the claimant could make no arrangements for alternate child care.

R.52. The conclusions of law entered by the administrative law judge and adopted by the Board provide in part:

–that at the time of initial employment the claimant and the employer mutually agreed to a work schedule.

–that the employer, thereafter, unilaterally changed the work schedule.

–that the claimant refused to accept the unilateral change in the work schedule.

–that the employer's unilateral change in the work schedule was a breach of the employment agreement.

–that the claimant left employment because of the breach in the employment agreement.

–that a reasonable, prudent person, under similar circumstances would have left employment.

–that the claimant left employment for reasons "objectively" related to the job.

–that the claimant is, therefore, entitled to benefits under the Act.

R. 52.

### *STANDARD OF REVIEW*

■ The question of whether an employee voluntarily terminated employment without good cause is a question of fact to be determined by the Board. *Lofton v. Review Bd. of the Indiana Employment Sec. Div.*, 499 N.E.2d 801, 802 (Ind.Ct.App.1986). This court will not reweigh the evidence but will consider only the evidence that supports the Board's decision. *Id.* We will reverse only if reasonable persons would be bound to reach a conclusion opposite that of the Board.

*Winder v. Review Bd. of Employment Sec. Div.*, 528 N.E.2d 854, 856 (Ind.Ct.App.1988).

■ The claimant has the burden of establishing that the voluntary termination of employment was for good cause. *Thomas v. Dep't of Employment and Training Serv's*, 543 N.E.2d 397, 400 (Ind.Ct.App.1989). The claimant must show that (1) the reasons for abandoning employment were such as to impel a reasonably prudent person to terminate employment under the same or similar circumstances, and (2) the reasons are objectively related to the employment. *Gray v. Dobbs House, Inc.*, 171 Ind.App. 444, 447, 357 N.E.2d 900, 903 (1976).

### *EMPLOYMENT AGREEMENT*

Westview initially contends that because Jones was an employee at will, the finding that there was an employment agreement between Westview and Jones is erroneous. Westview cites three cases addressing the validity of an employment contract in actions for wrongful discharge. The cases establish that absent a set term of employment, an employment relationship is at will. *See Martin v. Platt*, 179 Ind.App. 688, 386 N.E.2d 1026 (1979); *Shaw v. S.S. Kresge Co.*, 167 Ind.App. 1, 328 N.E.2d 775 (1975); *Speeder Cycle Co. v. Teeter*, 18 Ind.App. 474, 48 N.E. 595 (1897). We fail to see the relevance of these cases to the situation at hand. Whether Jones was an employee at will is not dispositive of whether Westview and Jones agreed on the hours Jones would work. The Board's findings and conclusions establish no more than that.

■ Westview also contends that there was no agreement as to Jones's work schedule because Jones was an employee at will and her status as an employee at will allowed Westview the prerogative to adjust work schedules. In *Jones v. Review Bd. of Indiana Employment Sec. Div.*, 399 N.E.2d 844 (Ind.Ct.App.1980), this court noted:

Generally, an employer has the prerogative of setting business hours, working schedules and working conditions in the absence of a specific agreement. However, an employee has the right to place

conditions or limitations on his employment. If such conditions are made known to the employer and are agreed to by it, these conditions become contractual working conditions. If the working conditions are unilaterally changed by the employer and the employee chooses to terminate the employment rather than accept the change, the employee will be entitled to unemployment benefits since the reason for termination was a change in work agreed to be performed by the employee. Such reason constitutes good cause.

The Board determined that there was an agreement between Westview and Jones concerning Jones's work schedule and that Westview unilaterally breached that agreement. While there was no evidence presented to the Board of an express agreement that Jones would work only seven hours shifts, it was within the Board's discretion to find that after fourteen years of Jones working the same shift, there was an implied agreement between Jones and Westview concerning Jones's hours.

### *"GOOD CAUSE"*

■ An employee is disqualified from collecting unemployment compensation if the employee has left employment voluntarily "without good cause in connection with the work...." Ind.Code § 22–4–15–1(a) (West Supp.1995). Westview contends that Jones did not leave her employment for good cause because the proposed changes in Jones's working conditions were not so unfair or unjust as to compel a reasonably prudent person to quit work.

Westview relies on several cases in support of its contention, all of which are distinguishable from the facts here. In *Quillen v. Review Bd. of Indiana Employment Sec. Div.*, 468 N.E.2d 238 (Ind.Ct.App.1984), an employee asked for help and reduced hours. In response, the employer changed Quillen's method of pay from a salary basis to an hourly basis and reduced Quillen's hours from fifty-five hours per week to forty hours per week, with up to five hours of overtime. Quillen objected to the change and voluntarily terminated the employment. In upholding the denial of unemployment compensation,

this Court agreed with the Board that "the proposed change was not so unfair or unjust as to compel a reasonably prudent person to quit work under similar circumstances." *Quillen*, 468 N.E.2d at 242.

In *Wasylk v. Review Bd. of Indiana Employment Sec. Div.*, 454 N.E.2d 1243 (Ind.Ct. App.1983), Wasylk worked part-time at Sears Roebuck. Wasylk worked from January to October on a schedule of 8:00 a.m. until 5:00 p.m. on Mondays and Fridays, and from 8:00 a.m. until 1:30 p.m. on Tuesdays, Wednesdays and Thursdays. When Wasylk's hours were changed to 8:00 a.m. until 1:00 p.m. Monday through Friday, he quit. In upholding the denial of unemployment compensation, this Court noted that Wasylk signed an acknowledgment that he was a part-time employee with no guarantee of any number of hours and that he had no contract of employment for any specific hours. The Court went on to recognize a difference between the situation of a long-term full-time employee facing a drastic reduction in work hours and the situation of a short-term, part-time employee facing a reduction of hours.

These cases are distinguishable from Jones's situation in two significant ways. First, both affirm the Board's denial of unemployment compensation. Thus, neither stands for the proposition that a reduction or restructuring of a work schedule cannot be just cause for voluntary termination. Rather, because the Board's findings are deemed conclusive and we consider only the evidence and inferences drawn therefrom supporting the Board's decision, *Quillen*, 468 N.E.2d at 241, the opinions merely establish that there was substantial evidence to support the Board's findings and that reasonable persons would reach a similar result.

Second, both cases involve minor changes in employment conditions. In *Quillen*, working hours and pay were slightly reduced. In *Wasylk*, a part-time employee's hours were reduced. Both employees quit because they were unhappy with the changes. In contrast, Jones faced a major change in her employment conditions and quit because it would be impossible for her to work those hours. The question of "good cause" for termination is fact sensitive. What is rea-

sonable in one business might not be in another, or what is acceptable to one employee might not be to another.

Westview also contends that the Board's determination is erroneous because child care problems are not a valid consideration in a voluntary termination, citing *Gray*, 171 Ind.App. 444, 357 N.E.2d 900. However, the situation in *Gray* is distinguishable because the employee therein accepted a new shift assignment, and then capitulated to transportation and child care pressures. Had the employee refused the new shift assignment, because the change would create overwhelming transportation and child care pressures, then the decision to terminate employment would have been based on "good cause in connection with the work." I.C. 22–4–15–1(a). It would have been the proposed shift change that caused the employee to quit, rather than child care and transportation problems. In the case before us, Jones quit work because the change from a five-day a week, plus every other weekend, seven-hour work day to a three-day a week, plus every third weekend, eleven to thirteen-hour work day made it impossible for her to fulfill her familial obligations. It was not family or personal problems that prompted the decision to terminate employment. Rather, it was Westview's decision to restructure Jones's job that prompted Jones to quit. The decision was made that if Jones wanted to keep her present position, she had to work the new shift arrangement. Knowing that given her other obligations she could not work those hours, Jones terminated her employment. Thus, the Board's determination that Jones terminated her employment for "good cause in connection with the work" is supported by the evidence.

### EARLY TERMINATION OF EMPLOYMENT

Westview contends that because Jones left her employment twenty-six days prior to the shift change rather than waiting to see if the shift change was unmanageable, the Board was precluded from finding that she quit for

good cause in connection with the work. As noted in *Gray*, had Jones accepted the new shift, she might have waived her entitlement to receive unemployment compensation if she then terminated her employment. 171 Ind. App. 444, 357 N.E.2d 900. Further, Westview's position was unwavering. If Jones wanted to remain working as a diet clerk, she had to work the new shift. Thus, whether she quit twenty-six days early or the day before the shift change does not impinge on the Board's determination that Jones voluntarily terminated her employment for good cause.

Affirmed.

RUCKER, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

Westview, as the employer, had the prerogative to establish working hours, schedules and conditions in the absence of a specific agreement. *Jones v. Review Bd.* (1980) Ind.App., 399 N.E.2d 844. The shift change and the hour differences involved here were made by the hospital for clearly legitimate economic and business reasons.[1] Jones objected to the change upon grounds that she had two small children and her child-care situation did not permit her to work such long hours. Accordingly, Westview met with the Diet Technicians concerned and offered to try to assist with child-care difficulties and to explore lateral transfers to other departments. However, Jones and another employee reported that they were not interested in transferring and that they "could not work for an organization that did not care about them as people". Record at 44. Jones then voluntarily resigned.

Other than the fact that Jones had the benefits of working the same number of shift hours for many years of her employment-at-will, there is no evidence to support the conclusion that the employer and employee had a specific agreement with respect to the shift and to the hours of work. As stated in *Wior v. Anchor Industries* (1994) Ind.App.,

---

1. The evidence reflected that the changes would accomplish man-hour savings with regard to staffing and that the twelve hour shifts would afford to the patients the benefit of having contact with the same diet technician for all three meals of each day.

641 N.E.2d 1275, *reh'g denied,* although an employment contract may be express or implied, oral or written, one "may not, however, unilaterally bind another to a contract of employment". 641 N.E.2d at 1279. There is no indication that Westview bound itself to continue the hours and shift designation in perpetuity with respect to the at-will employee Jones. For this reason, it is my view that the Board erred in adopting the ALJ's conclusion that there was a contract with regard to Jones' hours. See *Wasylk v. Review Bd.* (1983) Ind.App., 454 N.E.2d 1243, 1246.

In my judgment, the evidence does not permit a reasonable conclusion that Jones left her employment with good cause. Westview had the prerogative to change the shifts and hours of the Diet Technicians for sound business and medical care reasons. By doing so the hospital did not breach any contractual arrangement with Jones.

I would reverse with instructions to deny unemployment benefits.