**SALIN BANK AND TRUST COMPANY, Appellant,**

v.

**REVIEW BOARD OF INDIANA DE-PARTMENT OF WORKFORCE DE-VELOPMENT and Frances Y. Hatfield, Appellees.**

No. 93A02–9710–EX–720.

Court of Appeals of Indiana.

June 12, 1998.

William N. Salin, Indianapolis, for appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant Salin Bank and Trust Company (Salin) appeals the decision of the Review Board of the Indiana Department of Workforce Development (Board) awarding unemployment compensation benefits to Salin's former employee, Frances Y. Hatfield. The evidence relevant to review is recited below.

Hatfield worked for Salin and its predecessor for over 18 years. During most of that time, Hatfield worked as a note teller. Her responsibilities included placing new loans in the computer, taking advances on lines of

credit, and recording payoffs. In January 1995, the president of Salin's Columbus operations, Linda Behrman, told Hatfield and the other members of the loan department that their positions would be eliminated in a restructuring of Salin. The loan operations were to move to Indianapolis.

Behrman informed Hatfield that she had three options: Hatfield could stay at the Columbus office in the same position until the job was eliminated and then take severance pay, she could apply for a different position with the Columbus office, or she could apply for the same position at the Indianapolis office.[1] Hatfield chose to stay until her position was eliminated. The options were explained verbally, but no document or memorandum outlining the options or the calculation of the severance pay was offered at the time. Hatfield understood that she was to receive compensation at the rate of one or two weeks' pay for each year of service up to a limit of 26 weeks of pay.

In July 1996, Behrman told Hatfield that her position would end on August 30, 1996. On August 29, 1996, while she was at work, Hatfield discovered that her son in another state had been seriously injured in a collision. Behrman told Hatfield that she could leave. Hatfield was paid through August 30, 1996.

An agreement dated August 30, 1996, regarding the termination of Hatfield's employment was mailed to Hatfield. On September 9, 1996, Hatfield signed and returned the document. In pertinent part, the document provides:

### RECITALS

(A) You formerly were associated with Salin Bank and Trust Company in the capacity of loan operations. Your employment with Salin Bank and Trust Company began on February 7, 1978. Salin Bank and Trust Company has restructured, resulting in the necessity for a reduction in force, i.e., fewer positions with fewer employees needed.

---

1. At the administrative hearing before a Board member, Behrman testified that although Hatfield was required to "post" or "bid" on a job,

Hatfield's work performance was "very satisfactory" and she would have been given a position with Salin.

(B) You have offered to resign your employment with Salin Bank and Trust Company effective August 30, 1996.

(C) In exchange for your offer of termination of employment, Salin Bank and Trust Company will compensate you as described in paragraph 1 below.

(D) As you know, Salin Bank and Trust Company and you (the 'parties') now desire to reduce to writing the terms of our agreements so that *all* the terms we've negotiated are clearly expressed and also to fully and finally resolve any and all matters arising out of our employment relationship. [Emphasis in original].

### AGREEMENT

1. *FINAL ACCORD AND SATISFACTION OF EMPLOYMENT RIGHTS:* In consideration of your agreements, memorialized in this Agreement and in compromise of any and all of your claims, real or potential, known or unknown, and the waiver of any existing or future employment or reinstatement rights with Salin Bank and Trust Company, Salin Bank and Trust Company agrees to pay you the total lump sum of $12,353.04, including all 1996 vacation, on the day following the 'Effective Date' of this Agreement, as that date is defined in paragraph 7.

It is understood that this lump sum does not represent any moneys to which you are currently owed or have otherwise earned or accrued by the Effective Date pursuant to any compensation plans, practices; policies, programs or procedures. Payment of such earned or accrued moneys shall be made upon your request or when applicable, pursuant to the terms of any compensation plans, practices, policies, programs or procedures.

You agree to accept the above sum in full and final accord, satisfaction, compromise and settlement of any and all claims and rights, whether disputed or undisputed, accrued or unaccrued, liquidated or unliquidated, vested or nonvested, arising in any way out of or under your employment with Salin Bank and Trust Company. . . .

At the hearing before the Administrative Law Judge (ALJ), Hatfield testified that she signed the agreement in order to receive the severance pay. She noted, as provided in the agreement, that some of her vacation pay was included in the lump sum. She testified that she left employment because her job was eliminated. Additionally, she stated that she did not understand the agreement to preclude filing for unemployment compensation benefits.

The ALJ determined that, pursuant to IND. CODE § 22–4–15–1 (1996 Supp.), Hatfield did not resign on August 30, 1996, but was instead "laid off . . . due to lack of work." In relevant part the ALJ concluded:

Chapter 15, Section 1(a) of Indiana Employment and Training Services Act provides that an individual who quits employment must do so for good cause in connection with the work.

Although claimant told employer's predecessor that she was accepting the first option, claimant never told the predecessor or employer that she was resigning her employment on August 30, 1996, or was offering to so resign then. Instead the president of employer's branch told claimant during the latter part of July 1996 that her last day of work would be August 30, 1996 and that her position would be eliminated on that date. The letter of August 30, 1996 never stated that the lump sum of $12,353.04 constituted severance pay. Instead the letter stated that the consideration for the lump sum was claimant's waiver and release of all claims that she had or might have against employer. Claimant never signed a statement that she was accepting the first option. Neither employer's predecessor nor employer ever gave claimant a statement concerning any severance pay that she would receive. **CONCLUSIONS OF LAW:** From the findings in the foregoing paragraph, the [ALJ] concludes that claimant did not resign from her employment at employer on August 30, 1996 but was laid off by employer on August 30, 1996 due to lack of work. Being laid off for lack of work is not a disqualifying condition for the denial of unemployment insurance under Chapter

15, Section 1(a) of the Act. Therefore, the [ALJ] concludes claimant did not leave voluntarily her employment at employer but was laid off by employer due to lack of work.

DECISION: Deputy's initial determination on May 1, 1997 is affirmed. If claimant is eligible and is qualified otherwise, she is entitled to benefits.

As noted above, Salin now appeals the award of unemployment compensation benefits to Hatfield. Salin raises four issues which may be consolidated as:

(1) whether the ALJ's decision is contrary to law and ignores competent evidence; and

(2) whether the ALJ's decision is contrary to public policy.

■ On review of a Board decision, this Court accepts the Board's factual determinations as conclusive and binding. *Parkison v. James River Corp.*, 659 N.E.2d 690, 692 (Ind. Ct.App.1996). In determining whether the Board's decision is supported by substantial evidence of probative value, this Court will neither reweigh the evidence nor reassess witness credibility while considering only the evidence most favorable to the Board's decision. *Id.* As noted by Salin, findings which ignore competent evidence may be reversed. *Willett v. Review Bd.*, 632 N.E.2d 736, 738 n. 1 (Ind.Ct.App.1994). As to a question of law, this Court is not bound by the Board's interpretation which will be reviewed to determine whether the Board correctly interpreted and applied the applicable law. *Id.*

■ Salin urges that Hatfield voluntarily signed the agreement and that she affirmed at the hearing that the agreement recites that she offered to resign. Salin complains that the Board ignored competent evidence that Hatfield resigned. However, when questioned regarding the agreement, Hatfield explained that she stopped working as of August 30, 1996, because her job was eliminated. Neither Hatfield nor Behrman, who had orally explained the options, testified that the first option of working until the job was eliminated constituted an offer to resign. The agreement sent to Hatfield after her employment ended and signed by Hat-field after the termination contains the sole representation that Hatfield resigned.

Implicitly rejecting the representation contained in the agreement, the Board determined that the recitation of resignation sent by Salin and signed by Hatfield after the termination date could not alter the fact that as of August 30, 1996, Hatfield was terminated for lack of work. Hatfield testified that she signed the agreement because she believed she had to in order to receive the benefits orally explained and in order to receive her vacation pay apparently to which she was entitled. The Board's finding that Hatfield was laid off for lack of work as of August 30, 1996 and that she later signed the agreement to obtain the amount she had been promised and her vacation benefits is supported by substantial evidence in the record.

■ Further, Salin directs this Court to authority for the proposition that by accepting a retirement offer rather than facing possible changes by the employer, employees voluntarily leave for personal reasons which is a disqualifying event rather than voluntarily leaving with good cause. *See York v. Review Bd. of Ind. Employment Sec.*, 425 N.E.2d 707, 711 (Ind.Ct.App.1981). It is true that a claimant has the burden of establishing that a voluntary termination of employment is for good cause. *Indianapolis Osteopathic Hosp. v. Jones*, 669 N.E.2d 431, 433 (Ind.Ct.App.1996). Also, a claimant must demonstrate that the general disqualification provisions of IND.CODE § 22–4–15–1 are inapplicable. *See York*, 425 N.E.2d at 710. The onus is upon a claimant to show that "(1) the reasons for abandoning employment were such as to impel a reasonably prudent person to terminate employment under the same or similar circumstances, and (2) the reasons are objectively related to the employment." *Indianapolis Osteopathic*, 669 N.E.2d at 433.

Salin complains that the Board's decision is contrary to law because the agreement signed by Hatfield recites that she voluntarily resigned. Salin's argument is circular. It is premised upon Salin's initial contention that Hatfield signed the agreement; thus, she voluntarily left for personal reasons, a disqualifying factor for unemployment com-

pensation benefits. This argument fails in light of our finding that the evidence most favorable to the Board's decision supports the Board's finding that, as of the date of her termination, Hatfield had not resigned. Instead, Hatfield ceased to work for Salin on the date chosen by Salin because of lack of work. Hatfield carried her burden in demonstrating that she voluntarily left for good cause. Moreover, based upon sustainable facts, the Board's determination that Hatfield left for good cause, i.e. lack of work, is not contrary to law.

■ Finally, Salin contends that the Board's decision should be reversed inasmuch as it contravenes public policy for failing to enforce a contractual agreement. Salin contends that the agreement is valid and unambiguous.

■ Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning. *Ostrander v. Bd. of Directors, Porter*, 650 N.E.2d 1192, 1196 (Ind. Ct.App.1995). If " 'reasonable persons would find a contract susceptible of more than one construction, an ambiguity exists and should be resolved by the trier of fact.' " *HOTS, Inc. v. St. Joseph Medical Center*, 683 N.E.2d 243, 247 (Ind.Ct.App.1997) (quoting *Fetz v. Phillips*, 591 N.E.2d 644, 647 (Ind.Ct. App.1992)).

Here, the Board noted that although the agreement recites that the lump sum payment to Hatfield does not constitute "any moneys to which you are currently owed or have otherwise earned or accrued," the amount specifically includes payment of "all 1996 vacation." A clear ambiguity exists as to whether a portion of the lump sum payment is attributable to salary or other compensation owed to Hatfield.

■ Further, the agreement states: "Payment of such earned or accrued moneys shall be made upon your request or when applicable, pursuant to the terms of any compensation plans, practices, policies, programs or procedures." The agreement specifically contemplates payment of other compensation to Hatfield even though it states that the agreement constitutes the full and final resolution of all matters arising out of the em-

ployment relationship. In short, other ambiguities exist as well. An ambiguous contract, that is one requiring construction, will be construed against the drafter. *See Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind.1995). Under these circumstances, where the provisions of the agreement are ambiguous and Hatfield testified that she did not understand that the agreement intended to prevent her from filing a claim for unemployment compensation benefits, Salin cannot rely upon a public policy argument to enforce its intended purpose of the agreement.

■ Salin's urging that public policy concerns should be contemplated may be finally laid to rest by noting the purpose of the Unemployment Compensation Act. The act is meant "to provide benefits to those who are involuntarily out of work through no fault of their own, for reasons beyond their control ... and to subsist on a reasonably decent level ... in keeping with the humanitarian and enlightened concepts of this modern day." *GM v. Review Bd. of Workforce Development*, 671 N.E.2d 493, 498 (Ind.Ct.App. 1996).

Here, Hatfield testified, and the Board found, that she was out of work solely because her job was eliminated. Salin's president of operations in Columbus noted that Hatfield performed her duties very satisfactorily. Accordingly, the Board's decision awarding unemployment compensation benefits is affirmed.

Affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.