Garry **COLEMAN**, Appellant,

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and State Board of Tax Commissioners, Appellees.**

No. 93A02–0809–EX–803.

Court of Appeals of Indiana.

Feb. 11, 2009.

Publication Ordered April 16, 2009.

Garry Coleman, Indianapolis, IN, Appellant Pro Se.

Gregory F. Zoeller, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Garry Coleman appeals the denial of unemployment compensation benefits by the Department of Workforce Development ("DWD") following the termination of his employment with the Indiana Department of Local Government Finance ("DLGF"). We reverse and remand.

### Issue

Coleman raises several issues on appeal. We address only one dispositive issue, which is whether there is sufficient evidence that the DLGF terminated Coleman's employment for "just cause."

### Facts

We are reminded that emails last forever and can come back to haunt the writer. The DLGF hired Coleman as a systems analyst in June 2005. In November 2005, Coleman signed a document entitled "Information Resources Use Agreement" ("IRUA"), which was intended to govern use of State-provided technology by State employees. Exhibits p. 21. Included within the IRUA was the following section:

2. ***De Minimis* Personal Use.**

a. Personal use of state information resources is governed generally by Section 1.3 and specific policy sections of the IOT Security Policies and Minimum Compliance Requirements (available online at http://iot.in.gov/security/).

b. I understand that this IRUA contains provisions relating to *de minimis, i.e.,* limited, personal use of Information Resources and is therefore considered a *de minimis* use policy permitted by the State Ethics Commission.

c. I understand that Information Resources may be used for *de minimis* personal use that cannot reasonably be handled away from work. I shall make every effort to minimize personal use of Information Resources.

d. I shall not view, write, or respond to personal emails through a web-based browser unless the web-based browser has been pre-approved by the CISO or the CISO's designee; however, I shall not download personal email or files attached thereto onto Information Resources.

e. I understand that the *de minimis* use permitted by this agreement may be further limited or altogether prohibited by my agency.

*Id.* at 22. The IRUA also stated:

**Inappropriate material.** I shall not use Information Resources to access, upload, download, or distribute any jokes, comments, messages, or any other materials that may reasonably be considered pornographic, obscene, sexually explicit, dis-

criminatory, harassing, defamatory, offensive, or disruptive to any employee or third party, including but not limited to any content that might offend someone on the basis of his or her age, gender, race, sexual orientation, national origin, disability, or religion.

*Id.*

On January 25, 2008, the DLGF Commissioner sent Coleman a letter stating that his employment was terminated for violating the "de minimis" exception and for distributing inappropriate comments or messages via his DLGF email account. The letter listed six dates on which Coleman allegedly had violated these policies, and claimed he had wasted a total of sixteen hours sending improper or excessive emails.

Coleman applied for and initially received unemployment compensation benefits. The DLGF appealed this determination. In the hearing before an ALJ, the DLGF submitted records of ten email conversations Coleman had participated in December 2006, November 2007, December 2007, and January 2008. Although Coleman's termination letter referenced five dates on which he allegedly sent inappropriate emails, the email records submitted at the hearing only corresponded with one of those dates—January 16, 2008. Coleman often was not the initiator of these email chains, which usually involved other DLGF employees, and his emails usually consisted of a sentence or two.

The email from December 2006, which Coleman sent to all DLGF employees, contained pictures of cubicles of various DLGF employees that had been decorated for the holidays and asked DLGF employees to vote for their favorite one. Coleman testified at the hearing without contradiction that the DLGF Commissioner had asked him to do this. In another exchange from January 16, 2008, a fellow DLGF employee emailed to several people, male and female, a picture of what appeared to be two persons having sex atop a bridge. Coleman, along with others, made comments about the picture. Coleman testified at the hearing, again without contradiction, that the DLGF employee who originally sent the picture was not fired but, instead, received a raise shortly after Coleman was fired.

Some of the email exchanges reflected Coleman's dissatisfaction with his superiors at the DLGF or decisions they had made. In one from December 3, 2007, Coleman forwarded an email from his supervisor to a former DLGF employee, complaining about the supervisor and making comments, along with the former employee, that reasonably could be construed as suggesting that the supervisor was homosexual. On December 13, 2007, Coleman forwarded to the former employee an email from the Deputy Commissioner of the DLGF, giving the schedule for an after-hours DLGF "pub crawl" that was planned; Coleman indicated he was not going on the "pub crawl." Exhibits p. 58. In another series of emails from December 13, 2007, Coleman discussed DLGF employees who had recently received bonuses and questioning whether some of them deserved bonuses. In an exchange with the former DLGF employee from January 9, 2008, Coleman discusses negatively a report he was being asked to prepare and seeking some information from the former employee to help him complete it. In another email exchange from January 14, 2008, Coleman's sister, a non-DLGF State employee, said that the DLGF Commissioner was a "snake," to which Coleman replied, "She's the sweat on a snake's butt!" *Id.* at 37.

On June 23, 2008, the DWD ALJ concluded that Coleman had been fired for just cause because he had knowingly vio-

lated a uniformly enforced rule of the DLGF, namely the "de minimis" personal email usage rule. Thus, the ALJ reversed the award of unemployment compensation benefits to Coleman. On August 13, 2008, the DWD Review Board affirmed the ALJ's ruling. Coleman now appeals.

### Analysis

█ The Indiana Unemployment Compensation Act provides that any decision of the DWD Review Board is conclusive and binding as to all questions of fact. Ind. Code § 22–4–17–12(a). Review Board decisions may be challenged as contrary to law, in which case we examine the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts. I.C. § 22–4–17–12(f). "Under this standard, we review determinations of specific or basic underlying facts, conclusions or inferences drawn from those facts, and legal conclusions." *Quakenbush v. Review Bd. of Ind. Dep't of Workforce Dev.*, 891 N.E.2d 1051, 1053 (Ind.Ct.App.2008).

█ When reviewing a decision by the Review Board, we must analyze whether the decision is reasonable in light of its findings. *Id.* We evaluate Review Board findings to determine whether they are supported by "substantial evidence." *Id.* We neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the Review Board's findings. *Id.* We will reverse only if there is no substantial evidence to support the Review Board's findings. *Id.* We further note that the Unemployment Compensation Act is given a liberal construction in favor of employees because it is social legislation with underlying humanitarian purposes. *Id.*

█ In Indiana, an unemployed claimant is ineligible for unemployment benefits if he or she is discharged for just cause.

*Stanrail Corp. v. Review Bd. of Dep't of Workforce Dev.*, 735 N.E.2d 1197, 1202 (Ind.Ct.App.2000), *trans. denied;* I.C. § 22–4–15–1. Just cause is defined by statute as:

> (1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;
>
> (2) knowing violation of a reasonable and uniformly enforced rule of an employer;
>
> (3) unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;
>
> (4) damaging the employer's property through willful negligence;
>
> (5) refusing to obey instructions;
>
> (6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;
>
> (7) conduct endangering safety of self or coworkers; or
>
> (8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction or for any breach of duty in connection with work which is reasonably owed an employer by an employee.

I.C. § 22–4–15–1(d). The DLGF contended that it fired Coleman for knowingly violating a reasonable and uniformly enforced work rule. We therefore must limit our analysis to that issue and cannot consider other grounds for Coleman's discharge. *See Butler v. Review Bd. of Indiana Dep't of Employment and Training Servs.*, 633 N.E.2d 310, 312 (Ind.Ct.App.1994).

█ The employer bears the initial burden of establishing that an employee was terminated for just cause. *Owen County ex rel. Owen County Bd. of Comm'rs v. Indiana Dep't of Workforce*

*Dev.*, 861 N.E.2d 1282, 1292 (Ind.Ct.App. 2007). To establish a prima facie case for just cause discharge for violation of an employer rule, it is necessary for the employer to show that the claimant: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule. It is not enough to prove that the employee violated a known rule; it must be established that the employee knowingly violated the rule. *Stanrail*, 735 N.E.2d at 1203. If an employer meets this burden, the claimant must present evidence to rebut the employer's prima facie showing. *Id.* The reason for requiring uniform enforcement of a known and reasonable rule is to give notice to employees about what punishment they can reasonably anticipate if they violate the rule and to protect employees against arbitrary enforcement. *See McClain v. Review Bd. of Indiana Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1319 (Ind.1998).

■■■ We conclude the record here lacks substantial evidence to support a finding that Coleman knowingly violated a uniformly enforced rule. We first note that the DLGF/State of Indiana discipline policy states in part, "Where appropriate, employee disciplinary actions are to be corrective and progressive in nature." Exhibits p. 15. Elsewhere, the policy states:

> A dismissal terminates employment. It is used where the employee's actions were thought to be conducive to rehabilitation, but corrective measures have not achieved conformance with established standards of performance or conduct. Dismissal may be the first disciplinary action taken in those instances where the actions of the employee make continued employment in state government unacceptable.

*Id.* at 17. It strikes us that if the DLGF truly was concerned that Coleman was sending too many personal emails, under this progressive discipline policy it ought to have confronted him about it and placed him on notice about his behavior. If, then, Coleman continued sending personal emails as before, it would be more appropriate to argue that the DLGF had just cause to fire him. Instead, the DLGF did not attempt any corrective measures, skipped "progressive" discipline altogether, and immediately terminated Coleman's employment. The DLGF, however, has failed to allege or prove that the extent to which Coleman used his DLGF email account for personal use made his continued employment "unacceptable," which is the stated basis for skipping "progressive" discipline and proceeding directly to termination.

There might be a situation where email usage is so inordinate that it should be clear to any reasonable person that it exceeded a "de minimis" amount, thus justifying immediate termination. *Cf. Voss v. Review Bd. Dep't of Employment and Training Servs.*, 533 N.E.2d 1020, 1022 (Ind.Ct.App.1989) (holding employee was fired for just cause for excessive use of company phone to make long distance calls, where such calls were absolutely prohibited by rule and employee made 190 long distance calls in a four-week period). This is not such a case. What is in this record are ten email conversations that Coleman participated in over the course of many months. Coleman did not initiate many of them, and none of them were lengthy dissertations. One email that he did initiate, regarding the cubicle decorating contest in December 2006, had the apparent blessing of the DLGF Commissioner. Some of the other emails occupied a gray area between work-related and personal, such as where Coleman sought information from a former co-worker for a report he was preparing, or where there

was discussion about which DLGF employees deserved to receive a bonus at the 2007 DLGF holiday party. Others involved a back-and-forth between numerous parties, including several DLGF employees, in which Coleman contributed a few responses. Although the DLGF claimed in Coleman's termination letter that he had wasted upwards of sixteen hours of work time on personal emails over a two-month span, the ALJ explicitly rejected that assertion. App. p. 67.

On that point, we observe that the termination letter also alleged that Coleman sent "inappropriate" material through email at work. The ALJ did not address this basis for Coleman's firing in his order. Perhaps this is because it is abundantly clear that to the extent the DLGF has a ban on sending "inappropriate" messages or items through email, the DLGF does not uniformly enforce that ban. The most explicit sexual material in the record is the emailed photograph appearing to depict two persons having sex atop a bridge. The DLGF employee who originally sent that photograph to numerous recipients, instead of being fired, was given a raise after Coleman was terminated.

■ We further observe that the term "de minimis" is incapable of precise definition. The only further definition of that phrase in the IRUA is that it means "limited." Exhibits p. 22. Violation of a vague work rule that fails to provide employees notice of precisely what conduct could lead to termination is not just cause for discharge in the context of unemployment compensation. For example, in *Citizens Gas and Coke Utility v. Review Bd. of Indiana Employment Sec. Div.*, 471 N.E.2d 1175, 1177–78 (Ind.Ct.App.1984), trans. denied, we agreed with the Review Board that an employee was not terminated for just cause for allegedly violating an attendance policy that did not give a spe-

cific number of intolerable absences, and where the employee was not forewarned that he was approaching a level of absences that could lead to immediate dismissal. Similarly, in *Stanrail*, we held that where a company had both a written and unwritten attendance policy, and where exceptions to the written policy were decided on a case-by-case basis at the sole discretion of the company human resources manager, an employee who had been discharged for violating the written attendance policy was not fired for just cause because of a lack of knowledge regarding the unwritten, discretionary exceptions to that policy. *Stanrail*, 735 N.E.2d at 1205.

Clearly, employees are left to guess what is "de minimis" use and what is not. Coleman was never warned beforehand that his email usage was approaching or exceeding what DLGF management believed was "de minimis." This open-ended standard failed to give Coleman notice of what precisely was prohibited and what was acceptable under the IRUA and, furthermore, allows arbitrary enforcement by DLGF management. Especially in conjunction with the DLGF's stated policy regarding progressive discipline, there is insufficient evidence that Coleman knowingly violated the "de minimis" rule. Thus, he was not terminated for just cause.

Certainly, the DLGF is entitled to restrict the amount of personal emailing that its employees do during work hours. The DLGF could have confronted Coleman about his email usage if it felt that usage exceeded the vague "de minimis" boundary. The DLGF also was entitled to fire Coleman when it did, particularly given his apparent dislike of his superiors at the agency; this is not a wrongful termination case. But the DLGF failed to establish that Coleman's firing, with no advance

warning regarding his email usage, was for just cause as that term applies in the context of unemployment insurance. *See Frank v. Review Bd. of Indiana Employment Sec. Div.*, 419 N.E.2d 1318, 1318–19 (Ind.Ct.App.1981) (noting that question of whether employer was permitted to fire employee is different from question of whether employee was fired for just cause and is or is not entitled to unemployment benefits).

### Conclusion

The record lacks substantial evidence that Coleman was terminated for just cause. We reverse the Review Board's denial of unemployment compensation benefits and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAILEY, J., and MATHIAS, J., concur.

### *ORDER*

When this Court issued the Memorandum Decision, marked Not for Publication, on February 11, 2009, this Court concluded that publication was unnecessary. Upon further consideration, this Court has determined that this case meets one or more of the criteria set forth in Indiana Appellate Rule 65(A) and that the opinion should be published. Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. This Court's opinion handed down in this cause on February 11, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

BAILEY, MATHIAS, BARNES, JJ., concur.