**Amy J. BROWN, Appellant–Claimant,**

**v.**

**INDIANA DEPARTMENT OF WORK-FORCE DEVELOPMENT and French Lick Casino and Resort, LLC, Appellees.**

No. 93A02–0904–EX–360.

Court of Appeals of Indiana.

Dec. 8, 2009.

Publication Ordered Jan. 19, 2010.

Katherine J. Rybak, Indiana Legal Services, Inc., Evansville, IN, Thomas M. Frohman, Indiana Legal Services, Inc., Bloomington, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Claimant, Amy J. Brown (Brown), appeals the decision by the Review Board of the Indiana Department of Workforce Development (DWD) denying her request for unemployment benefits.

We affirm.

*ISSUES*

Brown raises two issues for our review, which we restate as follows:

(1) Whether French Lick Resort & Casino, LLC (French Lick), discharged Brown for good cause; and

(2) Whether Brown voluntarily quit her employment with French Lick for good cause.

## FACTS AND PROCEDURAL HISTORY

Brown began working at French Lick on September 11, 2006. When she started her employment, she was aware that her job description could require her to work nights, weekends, and holidays as needed because French Lick is open twenty-four hours a day. Brown was not guaranteed any particular shift but informed the manager, who was in charge of scheduling, that she needed to work first shift because she had childcare issues for her two children—one of whom is diabetic. The manager told her that she would work first shift because it was a policy in her department that she could not work the same shift as her husband, who was also employed at French Lick and working second shift. Brown did not inform Human Resources of her childcare concerns.

At the end of September 2008, French Lick changed Brown's shift from first shift, scheduled from, 7:30 a.m. to 6:00 p.m. to second shift, scheduled from 4:30 p.m. to 3:00 a.m. When Brown learned of the change, she sought to transfer positions within the company to keep her first shift and also attempted to find a babysitter. Employees whose shifts were changed were required to sign papers indicating they accepted the shift changes. Brown, however, did not sign the paperwork and notified her immediate supervisors, but not Human Resources, that she would not accept the shift change.

On the first day Brown was scheduled to start her new shift, she did not go to work or call in, because she had already informed her employer in writing that she did not accept the shift change, and she did not think it was "necessary to call in on top of already telling them." (Appellee's App. p. 14). Brown missed three consecutive days of work, in violation of the attendance policy, which states, "[f]ailure to call in or report an absence for three consecutive days will be considered a voluntary resignation." (Appellee's App. p. 6). This policy was listed in the French Lick Employee Handbook, for which she acknowledged receipt.

On October 14, 2008, Brown applied for unemployment benefits. On November 14, 2008, a claims deputy issued a determination of eligibility and found that French Lick had just cause to discharge Brown because of unsatisfactory attendance. On November 25, 2008, Brown appealed the decision. A hearing was held before an Administrative Law Judge (ALJ). On February 6, 2009, the ALJ made the following findings of fact and conclusions of law, in relevant part:

Findings of Fact: [Brown] failed to return to work or call in on October 12, October 13, and October 14, 2008. [Brown] did not return to work because she could not work the shift [French Lick] scheduled her to work. [French Lick] changed [Brown's] schedule shift from the day shift to the night shift. [Brown] was unable to work the night shift because of child care issues. [Brown] did not call in because she previously notified the employer that she would not [be] able to work the night shift.

[French Lick] has a policy that 3 consecutive shifts of no call, no show results in separation from employment. [Brown] agreed this was a policy of the employer. [French Lick] considers 3 consecutive shifts of no call, no show to be voluntary termination. [French Lick] terminates all employees after 3 days of no call, no show. [Brown] was aware that failing to

call or come in on for 3 consecutive shifts would result in her separation from employment. [Brown] did not choose to leave employment. [French Lick] discharged [Brown] per the policy of the employer that results in termination for 3 consecutive shifts of no call, no show.

Conclusions of Law: [French Lick] discharged [Brown] for 3 consecutive shifts of no call, no show. The employer has a policy that results in termination of employment for 3 consecutive shifts of no[ ] call[,] no show. The policy is a rule.... The rule is uniformly enforced in that all employees that fail to come in or call for 3 consecutive shifts are terminated. [Brown] was aware of the policy.... [Brown] knowingly violated a known, reasonable and uniformly enforced rule of the employer.

(Appellant's App. pp. 4–5).

On February 20, 2009, Brown filed a request of review by the Review Board. On March 23, 2009, the Review Board affirmed the decision of the ALJ with an addendum, finding:

Even if [Brown] did quit the employment as she argues [ ], [Brown] voluntarily left the employment without good cause in connection with the work. The Review Board has consistently found that when an employee accepts work at a place of employment that operates multiple shifts that the employee cannot argue she had good cause to quit due to a change in working conditions if the employer moves the employee to another shift.

(Appellant's App. p. 2).

Brown now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Standard of Review

The Indiana Unemployment Compensation Act provides that any decision of the Review Board shall be conclusive and binding as to all questions of fact. Ind. Code § 22–4–17–12(a). Review Board decisions may, however, be challenged as contrary to law, in which case the reviewing court examines the sufficiency of the facts found to sustain the decision and sufficiency of the evidence to sustain the findings of facts. I.C. § 22–4–17–12(f). "Under this standard, we review determinations of specific or basic underlying facts, conclusions or inferences drawn from those facts, and legal conclusions." *Quakenbush v. Review Bd. of Indiana Dept. of Workforce Dev.*, 891 N.E.2d 1051, 1053 (Ind.Ct.App.2008).

■ When reviewing a decision by the Review Board, our task is to determine whether the decision is reasonable in light of its findings. *Davis v. Review Bd. of Indiana Dept. of Workforce Dev.*, 900 N.E.2d 488, 492 (Ind.Ct.App.2009). Our review of the Review Board's findings is subject to a "substantial evidence" standard of review. *Id.* In this analysis, we neither reweigh the evidence nor assess witness credibility, and we consider only the evidence most favorable to the Review Board's findings. *Id.* Further, we will reverse the decision only if there is no substantial evidence to support the Review Board's findings. *Abdirizak v. Review Bd. of Indiana Dept. of Workforce Dev.*, 826 N.E.2d 148, 150 (Ind.Ct.App.2005).

### II. Discharged for "Just Cause"

■ Brown contends that there is no evidence to support the conclusion that she was discharged from her employment with French Lick for just cause. The purpose of the Unemployment Compensation Act is to provide benefits to those who are involuntarily out of work, through no fault of their own, for reasons beyond their control. *Wasylk v. Review Bd. of Indiana Employment Sec. Div.*, 454 N.E.2d 1243,

1245 (Ind.Ct.App.1983). The employer bears the initial burden of establishing that an employee was terminated for just cause. *Coleman v. Review Bd. of Indiana Dept. of Workforce Dev.*, 905 N.E.2d 1015, 1019–20 (Ind.Ct.App.2009). To establish a *prima facie* case for just cause discharge for violation of an employer rule, the employer has to show that the claimant: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule. *Id.* at 1020. It is not enough to prove that the employee violated a known rule; it must be established that the employee knowingly violated the rule. *Id.* If an employer meets this burden, the claimant must present evidence to rebut the employer's *prima facie* showing.

The Review Board argues that Brown was discharged for just cause because she knowingly violated her employer's attendance policy when she failed to call into work and did not show up for work for three consecutive days. During the hearing, Brown acknowledged receipt of the employee handbook, which includes the attendance policy, and admitted that she knew of the attendance policy. The ALJ concluded that because Brown was aware of the attendance policy and knowingly violated it, she "did not choose to leave employment. [French Lick] discharged [Brown] per the policy of the [French Lick] that results in termination for 3 consecutive shifts of no call, no show." (Appellant's App. p. 4).

Nevertheless, we find that Brown has presented evidence to rebut French Lick's claim that she was discharged for just cause. Based on the ALJ's Findings of Fact, which are generally conclusive and binding on this court, "[Brown] did not call in because she previously notified the employer that she would not [be] able to work the night shift." (Appellant's App. p. 4); *Kentucky Truck Sales, Inc. v. Review Bd. of Indiana Dept. of Workforce Dev.*, 725

N.E.2d 523, 525 (Ind.Ct.App.2000). If the Review Board factually concluded that Brown had previously notified the employer that she would not come to work, then it cannot follow that she violated the "no call/no show" policy, and, thus, there is not substantiated evidence to support the conclusion that Brown was discharged by French Lick.

### III. *Voluntary Termination*

■ Next, Brown argues that she voluntarily left her employment for good cause—namely being unable to find childcare for her child. While one who voluntarily leaves his or her work without good cause is subject to disqualification for employment benefits under I.C. § 22–4–15–1(a), there are circumstances when an employee who voluntarily leaves his employment is justified, and no disqualification results. *Wasylk*, 454 N.E.2d at 1245. In such cases, "the claimant bears the burden of proving that she left the employment voluntarily with good cause, and must establish: (a) that her reasons for abandoning her employment would impel a reasonably prudent person to terminate under the same or similar circumstances; and (b) that these reasons or causes are objectively related to the employment." *Id.* at 1246 (citing *York v. Review Bd. of Indiana Employment Sec. Div.*, 425 N.E.2d 707, 710 (Ind.Ct.App.1981)).

This court has previously determined that under most circumstances, child care considerations alone do not constitute good cause for terminating employment, as they are not objectively related to one's employment. *Gray v. Dobbs House, Inc.*, 171 Ind.App. 444, 357 N.E.2d 900, 903 (1976). In *Gray*, Gray served as a substitute for various full-time employees as they took annual vacations, working the day shift, from 6:00 a.m. to 3:00 p.m. *Id.* at 902. Three months into her employment, without discussion of terms and conditions, she

was assigned a new shift, making childcare and transportation difficult. *Id.* Gray accepted the shift change and attempted to work the new shift; however, she had to terminate her employment due to childcare and transportation issues. *Id.* This court noted that while parental obligations "no doubt constitute good personal reason for termination of employment, they nevertheless lack the objective nexus with employment envisioned by the [Unemployment Compensation] Act." *Id.* at 903.

In a later case, *Indianapolis Osteopathic Hosp., Inc., v. Jones,* 669 N.E.2d 431, 432 (Ind.Ct.App.1996), this court dealt with the issue of childcare obligations and its relation to voluntarily resigning from employment for good cause. Jones, who had worked the same shift at her place of employment for fourteen years, was required to change shifts. *Id.* at 432. She informed her employer that she would not work the new shift because she could not find childcare for her children and as a result, voluntarily resigned. *Id.* The court, noting that the question of "good cause" for termination is a fact sensitive one, affirmed the Review Board's reversal of the ALJ and found that the new shift change made it impossible for her to fulfill her parental obligation. *Id.* at 434. However, the court stated that it was not family or personal problems that prompted the employee's decision to terminate employment; rather, it was her employer's decision to restructure her shift that prompted her to quit. *Id.* Thus, the Review Board's determination that the employee had terminated her employment for "good cause in connection with the work" was supported by the evidence. *Id.*

Brown maintains that her case is analogous to *Indianapolis Osteopathic Hosp.,* in that when the employer initiated change that resulted in difficulties in childcare and the Jones declined to accept the change, this court determined that she had good cause to voluntarily terminate her position in connection with work. *See* I.C. § 22–4–15–1(a). However, we find *Indianapolis Osteopathic Hosp.* to be distinguishable. In that case, the employee had worked the same shift for fourteen years, and the ALJ made a conclusion of fact "that at the time of initial employment [Jones] and the employer mutually agreed to a work schedule." *Id.* at 433.

Here, no such factual determination was made by the ALJ nor does the evidence support one. Brown acknowledged that when she started her employment, she was never guaranteed a particular shift position and could be required to work any shift as needed by her employer. Despite claiming that she "had an explicit agreement from the employer that she would not be scheduled on the same shift as her husband," the record is devoid of any other evidence of an explicit agreement between Brown and French Lick. (Appellant's Br. p. 12). Furthermore, the Review Board determined that "Working a shift other than the shift assigned to her husband did not become a contractual term of [Brown's] employment." (Appellant's App. p. 2). Additionally, the manager who told Brown of the policy is no longer employed by French Lick and based upon the testimony of the Human Resources representative who participated in the hearing, no such policy existed. Thus, there was no evidence of a mutual agreement to work a specific shift, besides Brown's self-serving testimony and "in the absence of a specific agreement otherwise, it is the employer's prerogative to set business hours, working schedules, and working conditions." *Wasylk,* 454 N.E.2d at 1246.

## CONCLUSION

Based on the foregoing, while we find that French Lick did not discharge Brown, we do not conclude that Brown voluntarily

left her position with French Lick with good cause.

Affirmed.

BAKER, C.J., and FRIEDLANDER, J., concur.

## ORDER

The Appellee, Review Board of the Indiana Department of Workforce Development, by counsel, filed Motion to Publish, and having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellee Review Board of the Indiana Department of Workforce Development's Motion to Publish is GRANTED, and this Court's opinion handed down in this cause on December 8, 2009, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

BAKER, C.J., FRIEDLANDER, RILEY, JJ., concur.