## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 20 2016, 9:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

David M. Austgen
Adam M. Sworden
Austgen Kuiper Jasaitis, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD

Gregory F. Zoeller
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Town of Cedar Lake, <br> *Appellant,* <br><br> v. <br><br> Review Board of the Indiana Department of Workforce Development, and Nicole Hoekstra, <br> *Appellees.* | June 20, 2016 <br><br> Court of Appeals Case No. 93A02-1512-EX-2165 <br><br> Appeal from the Review Board of the Department of Workforce Development <br><br> Steven F. Bier, Chairperson, George H. Baker, Member, and Larry A. Dailey, Member. <br><br> Cause No. 15-RB-1904 |

**Bradford, Judge.**

# Case Summary

[1] Between 2013 and 2015, Appellee Nicole Hoekstra was an employee of Appellant the Town of Cedar Lake ("Cedar Lake"). On July 10, 2015, Cedar Lake terminated Hoekstra's employment for unsatisfactory work performance and dissemination of confidential information. A claims deputy for the Indiana Department of Workforce Development ("the Department") determined that Cedar Lake did not have "just cause" to discharge Hoekstra and, as a result, Hoekstra was eligible for unemployment benefits. Cedar Lake appealed the decision and an Administrative Law Judge ("ALJ") affirmed the deputy's decision, concluding that Cedar Lake did not have just cause to terminate Hoekstra because she did not disseminate confidential information and Cedar Lake failed to follow its own progressive discipline policy. Upon final review by the Department's Review Board ("the Board"), the Board affirmed the ALJ's decision and adopted its findings of fact and conclusions of law. On appeal, Cedar Lake contends that there was insufficient evidence to support the Board's determination that Hoekstra was not discharged for just cause. We affirm the Board's decision.

# Facts and Procedural History

[2] Hoekstra began working for Cedar Lake as an administrative assistant and special events coordinator on April 15, 2013. On July 10, 2015, Cedar Lake terminated Hoekstra's employment for unsatisfactory work performance, violation of Cedar Lake's policy on email use, and dissemination of

confidential information. In the termination notice sent to Hoekstra, Cedar Lake outlined the incidents of alleged misconduct which included failure to complete various assigned tasks in a timely manner, failure to attend two town events (Flag Day and Chamber of Commerce Business Expo), and deleting emails which Cedar Lake considered destruction of public records. The notice also listed a general violation of Cedar Lake's policy prohibiting "Disclosure of confidential Town information to outsiders without proper authorization." Appellant's App. p. 12. Cedar Lake alleged that Hoekstra violated this policy by emailing the meeting minutes regarding an engineering project to Eric Wolverton, one of the engineers working on the project. Cedar Lake acknowledges that these records were available to the public but maintained that a public record request was required. Hoekstra testified that Wolverton informally requested the minutes, that he was the design engineer for the project, that he typically attended the meetings but was unable to attend this particular meeting, and that she did not believe any of the information she shared was confidential.

[3] On August 28, 2015, a claims deputy for the Department determined that Cedar Lake did not have just cause to discharge Hoekstra and that she was entitled to unemployment benefits. Cedar Lake appealed the decision and an ALJ held a hearing on October 15, 2015. On October 19, the ALJ affirmed the deputy's decision, concluding that Cedar Lake did not have just cause to terminate Hoekstra. The ALJ's findings of fact were, in relevant part, as follows:

Employer had a policy on email use. See Employer Exhibit 1 (Section IV ?D). "Improper (i.e. Immoral, Unethical and Unprofessional) use of the Town's computers and the Town's email system will not be tolerated." Employer's policy did not further define what proper use was. The policy did not specify if email could be used for personal use. Employer testified that there was a policy on retaining email. Employer did not submit the policy for the record. [Hoekstra] refused to stipulate to the policy. The [ALJ] finds there was no Employer policy on the retention of emails. While there are state laws that require government to maintain email for a certain amount of time, no evidence was offered that Employer ever made [Hoekstra] aware of these laws.

In the three years that [Hoekstra] worked for Employer, she received two promotions. Employer had a progressive discipline policy to correct unsatisfactory work performance or misconduct by employees. Employer never issued any steps of discipline to [Hoekstra] per the progressive discipline policy.

Employer would assign [Hoekstra] tasks, but not set a deadline. [Hoekstra] worked on several projects simultaneously for Employer. Employer did not prioritize the projects for [Hoekstra]. Jill Murr felt [Hoekstra] was not completing her duties in a timely manner. Murr felt [Hoekstra] was a poor communicator. Rather than use the progressive discipline policy to correct any deficiency in [Hoekstra]'s performance, Murr compiled records of everything [Hoekstra] had done wrong. See Employer's Exhibit 5. Murr did not confront [Hoekstra] about the failures.

[Hoekstra] did use her email for personal limited use. She used it on break times when Employer allowed such activity. [Hoekstra] carried on several conversations with Eric Wolverton, an engineer that worked on projects for the city. [Hoekstra]'s tone with Wolverton was friendly and personal, but was not unprofessional. [Hoekstra] provided Wolverton with information about city projects. That information was not

confidential. As someone who worked for the city, Wolverton had an interest in knowing what was going on in city government. Wolverton did not file form requests under the Access to Public Records Act, but [Hoekstra] provided the information on the basis of an informal request. Employer had no policy that employees could not provide public information to the public.

[Hoekstra] deleted several emails from her computer. [Hoekstra]'s email box was full, and this caused [Hoekstra] to be unable to send or receive messages. [Hoekstra] deleted sent emails to free up space. Later the email was expanded, and [Hoekstra] was again able to use her email. Employer had its IT department retrieve the deleted emails, which had not been completely deleted from the system.

Appellant's App. pp. 2-3.

[4] Among its conclusions of law, the ALJ found that (1) Cedar Lake's email policy "was a guideline rather than a rule because it did not define prohibited conduct," (2) "prohibitions against immoral, unethical, and unprofessional conduct are too vague to inform an employee of what type of behavior will violate the policy," (3) "an employee could not knowingly violate the policy," and (4) Hoekstra did not use her work email in an immoral, unethical, or unprofessional manner. Appellant's App. p. 4. The ALJ also found that Cedar Lake "had a progressive discipline policy to inform employees when they were failing to meet employer's reasonable expectation," did not use its progressive discipline policy with Hoekstra, did not attempt to correct any perceived deficiency in Hoekstra's conduct, did not inform Hoekstra that her work was

unacceptable, and that "[a] reasonable employee would not understand that the conduct here would lead to discharge." Appellant's App. p. 4.

[5] On November 3, 2015, Cedar Lake appealed the ALJ's decision to the Board. On November 20, the Board affirmed the ALJ's decision and adopted the ALJ's findings of facts and conclusions of law.

# Discussion and Decision

## Standard of Review

[6] Cedar Lake appeals the Board's determination that Hoekstra was not discharged for just cause and, therefore, is eligible for unemployment benefits. Our standard of review for a determination by the Board is threefold. "We review the Board's findings of basic facts under a 'substantial evidence' standard, and we neither reweigh the evidence nor assess its credibility. We consider only the evidence most favorable to the Board's findings and, absent limited exceptions, treat those findings as conclusive and binding." *Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 960 N.E.2d 118, 122 (Ind. 2012); *see also* Ind. Code § 22-4-17-12 ("Any decision of the review board shall be conclusive and binding as to all questions of fact."). "Ultimate facts— typically mixed questions of fact and law—are reviewed to ensure the Board has drawn a reasonable inference in light of its findings on the basic, underlying facts." *Id.* We give more deference to the Board where the matter lies within the particular expertise of the administrative agency. *Id.* Finally, we generally review the Board's conclusions of law *de novo*; however, "[a]n interpretation of

a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." *Id*. at 123 (quoting *LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000)).

## Whether Hoekstra was Discharged for Just Cause

[7] The purpose of Indiana's Unemployment Compensation Act ("the Act") is to "provide for payment of benefits to persons unemployed through no fault of their own." Ind. Code § 22-4-1-1. However, an individual is ineligible for unemployment benefits if he or she is discharged for "just cause." *P.K.E. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 942 N.E.2d 125, 130 (Ind. Ct. App. 2011) (citing Ind. Code § 22-4-15-1). According to the Act, "discharge for just cause" includes, but is not limited to, an employee's "knowing violation of a reasonable and uniformly enforced rule of an employer," "refusing to obey instructions," or "any breach of duty in connection with work which is reasonably owed an employer by an employee." Ind. Code § 22-4-15-1(d). This court has previously held that "[t]o find that a discharge was for just cause, the Review Board must first find that: (1) there was a rule; (2) the rule was reasonable; (3) the rule was uniformly enforced; (4) the claimant knew of the rule; and (5) the claimant knowingly violated the rule." *S.S. LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 953 N.E.2d 597, 601 (Ind. Ct. App. 2011) (citing *Barnett v. Review Bd.*, 419 N.E.2d 249 (Ind. Ct. App. 1981)).

[8] On appeal, Cedar Lake reiterates the arguments it made to the ALJ and Board; that Hoekstra underperformed on regular tasks and knowingly violated rules in the employee handbook. However, Cedar Lake does not dispute nor even address the Board's determination that Cedar Lake failed to utilize its own progressive discipline policy, and it is this determination that appears to be at the crux of the Board's ultimate conclusion. Cedar Lake's progressive disciplinary policy provides for the corrective action Cedar Lake would take in the event of disciplinary violations by an employee. Disciplinary violations are categorized into Group I and Group II Rules, the latter being the more serious violations. The policy provides that

> If a violation of a Group I rule occurs, the Department Head will use the following procedures:
>
> *Step 1*. Corrective interview, confirmed in writing.
>
> *Step 2*. Violation of any Group I rule, within the calendar year, may subject the employee to up to 3 days suspension without pay.
>
> *Step 3*. Violations of any Group I Rule, following a disciplinary suspension will be subject to termination. (Pending review by a Town Council hearing).

Ex. p. 73. The policy further provides that "Any violation of a Group II rule will result in the employee being relieved from duty with pay from 3 to 5 days and may be subject to termination pending an Administrative hearing." Ex. p. 74. The only Group II rule which Hoekstra was alleged to have violated was "Disclosure of confidential Town information." Ex. p. 74.

The Board specifically found that "[Cedar Lake] never issued any steps of discipline to [Hoekstra] per the progressive discipline policy," did not "use the progressive discipline policy to correct any deficiency in [Hoekstra]'s performance," did not confront Hoekstra about the alleged failures in her performance, and promoted Hoekstra twice during her three years working for Cedar Lake. Appellant's App. p. 4. Again, Cedar Lake does not contest these findings. Because Cedar Lake ignored its own policy and gave Hoekstra no indication that she had violated any rules, we conclude that Cedar Lake's disciplinary rules were not uniformly enforced and that there is insufficient evidence that Hoekstra knowingly violated the rules. *See Coleman v. Review Bd. of Ind. Dep't of Workforce Dev.*, 905 N.E.2d 1015, 1021 (Ind. Ct. App. 2009) (employer failed to use its progressive discipline policy to deal with employee's improper email use and so evidence was insufficient to find that claimant knowingly violated a uniformly enforced rule).

Furthermore, concerning the single alleged Group II violation—the only violation which would be eligible for termination on the first offense—the Board found, and Cedar Lake concedes, that the records released by Hoekstra were public and not confidential. Accordingly, Hoekstra's actions would not qualify as "disclosure of confidential Town information" sufficient to establish a Group II violation.

The judgment of the Board is affirmed.

Bailey, J., and Altice, J., concur.